CAMERON GENERAL CORPORATION, Plaintiff and Counterdefendant-Appellant, v. HAFNIA HOLDINGS, INC., *et al.*, Defendants and Counterplaintiffs-Appellees.

First District (3rd Division)  No. 1—95—3221

Opinion filed June 25, 1997.

Scott W. Hoyne, of Johnson & Bell, Ltd., of Chicago (Thomas H. Fegan and Mindy Kallus, of counsel), for appellant.

Baker & McKenzie, of Chicago (Michael A. Pollard and John C. Filosa, of counsel), for appellees.

JUSTICE GORDON delivered the opinion of the court:

## NATURE OF ACTION

Plaintiff Cameron General Corporation (Cameron General) filed the instant action against defendants Hafnia Holdings, Inc. (hereinafter Hafnia Holdings), Hafnia Insurance Co., Ltd., and Hafnia Insurance Group, premised upon theories of breach of contract and unjust enrichment. Cameron General sought reimbursement from the defendants for certain life insurance premium payments, recovery of office expenses arising from defendants' partial ownership of Cameron General, and an order requiring defendants to execute a change of beneficiary form in order to remove defendants as beneficiaries on certain life insurance policies. Defendants filed a counterclaim against Cameron General, also seeking reimbursement for certain life insurance premium payments. Thereafter, defendants filed a motion for summary judgment on both Cameron General's complaint and on their counterclaim. The trial court granted defendants' motion, holding that part of the relief sought in Cameron General's complaint was barred by the five-year statute of limitations contained in section 13—205 of the Illinois Code of Civil Procedure (735 ILCS 5/13—205 (West 1994)), and that judgment was required as a matter of law in defendants' favor on the remaining counts of Cameron General's complaint and on the relief sought in their counterclaim. Cameron General now appeals.

## FACTS

On February 20, 1992, Cameron General, a Chicago-based

company engaged in various lines of insurance-related business, filed its original complaint against the defendants, who are also alleged to be engaged in various aspects of the insurance business and whose principal place of business is in Denmark. There is no dispute that defendant Hafnia Holdings, Inc., is a subsidiary of defendant Hafnia Insurance Group, which in turn is a subsidiary of defendant Hafnia Insurance Company, Ltd., and there is no dispute that defendant Hafnia Holdings was formed for the purpose of entering the business transaction that is the subject of this lawsuit. The original complaint thereafter underwent two amendments. On March 17, 1995, Cameron General filed its second amended complaint, which contained the same theories of recovery as alleged in its original complaint and which in addition amended the amount of monetary relief requested in the prior complaints. In its second-amended complaint (hereinafter referred to as the complaint), Cameron General sought relief against defendants in five counts. At counts I and II, respectively premised upon theories of breach of an oral contract and unjust enrichment, Cameron General sought reimbursement for $16,449.04 in office expenses and services that it alleged it had paid on defendants' behalf in connection with defendants' operation of Cameron General between March 23, 1983, and September 5, 1986. At counts III and IV, also respectively premised upon theories of breach of contract and unjust enrichment, Cameron General sought reimbursement from defendants in an amount in excess of $175,000 for its payment of certain life insurance premiums both before and after September 5, 1986, the date on which defendants terminated their ownership interest in Cameron General. At count V, Cameron General sought an order requiring defendants to execute a change of beneficiary form removing defendants as the named beneficiaries under certain life insurance policies on the grounds that defendants no longer maintained an ownership interest in Cameron General.

Cameron General further alleged that on March 23, 1983, the defendants and Fred Pearson, Cameron General's chief executive officer (CEO) and sole shareholder, entered into a shareholders' agreement, pursuant to which defendants purchased a controlling percentage of the outstanding Cameron General stock held by Pearson. (It would appear that Pearson retained his CEO position at Cameron General throughout the period in question in the instant case). Under the shareholders' agreement, Pearson agreed to purchase term life insurance on behalf of Hafnia Holdings and to name Hafnia Holdings as the beneficiary thereof, and Hafnia Holdings agreed to pay the premiums for that coverage. The agreement further provided that, in the event of Pearson's death, Hafnia Holdings had a preemp-

tive right to purchase Pearson's remaining shares in Cameron General using the proceeds of Pearson's life insurance. The correlative rights and duties of Pearson and Hafnia Holdings with respect to the purchase of life insurance by Pearson and the ultimate use of its proceeds for buyout purposes by Hafnia Holdings are set forth at paragraphs 21.1 and 21.2 of the shareholders' agreement, which was attached to Cameron General's complaint. Those paragraphs provide in relevant part as follows:

"21.1 A. In the event of PEARSON's death during the term of this Agreement, HAFNIA [referring throughout the agreement to Hafnia Holdings] shall *** have a right to purchase all *** of the shares held by PEARSON's estate at a purchase price per share equal to the greater of (i) 150% of the Net Book Value per Share or (ii) the price per share proposed to be paid for such shares by a proposed bona fide purchaser/ purchasers ***.

21.2 PEARSON shall if so requested by HAFNIA apply for and purchase on behalf of HAFNIA such amounts of term life insurance as is recommended by HAFNIA assuming such amounts are available. HAFNIA shall pay for and be the beneficiary of such insurance which may be used in whole or in part to purchase PEARSON's shares of Cameron in accordance with 21.1 above from his estate. PEARSON can assign existing life insurances that may be currently in force with the understanding that HAFNIA shall only be obligated to pay the term portion of any premiums paid for these life insurances. PEARSON shall be responsible for the portion of premiums allocated to the ordinary life features of these insurances. PEARSON shall be allowed to borrow cash values and shall pay interest on such loans provided however, that such loans if any, shall be repaid upon PEARSON's death if HAFNIA exercises its rights according to 21.1 above, deducted from the purchase price for the shares of Cameron. HAFNIA may, at any time request PEARSON to terminate the insurance and stop the payment of premiums. However, PEARSON can continue premium payment and HAFNIA will assign or amend the ownership and beneficiary provision of these life insurances as PEARSON desires."

The complaint avers that, in March 1983, pursuant to the shareholders' agreement and the defendants' request, Pearson purchased life insurance on behalf of the defendants. The complaint states that Pearson maintained such insurance for the defendants' benefit until September 5, 1986, when the defendants sold their interest in Cameron General back to Pearson. During this period, the coverage limits on Pearson's life insurance coverage ranged from $5 million to $7 million, pursuant to the defendants' instructions. The

complaint recites that Cameron General paid the premiums for that coverage, for which it was partially reimbursed by the defendants, stating as follows:

"Cameron paid the premiums on the life insurance, and Hafnia [referring throughout to the defendants as Hafnia], beginning in or about March of 1983, partially reimbursed Cameron the term portion of the premiums of the life insurance obtained by Pearson for which Hafnia was the beneficiary."

According to the complaint, after the defendants sold their interest in Cameron General back to Pearson, they never asked Pearson to terminate the insurance or to stop paying premiums therefor.

The complaint further charges that from September 5, 1986, onward, Cameron General and Pearson continually asked Hafnia Holdings and the other defendants to execute a change of beneficiary form to reflect that Hafnia Holdings was no longer the owner or beneficiary and that they refused. Instead, the defendants purported to assign their rights as beneficiaries under the subject policies to Cameron General. The complaint further stated that Pearson's life insurance carrier did not consider that assignment to be an effective change of beneficiary and refused to remove defendants as beneficiaries without a properly executed change of beneficiary form.

In their counterclaim against Cameron General, filed with their answer on July 20, 1992, the defendants sought recoupment for payments they had made to Cameron General as reimbursements for Cameron General's payment of the subject life insurance premiums. The counterclaim purported to be premised upon a theory of unjust enrichment and alleged in pertinent part as follows:

"1. Counterplaintiffs HAFNIA HOLDINGS, INC., HAFNIA INSURANCE COMPANY, LTD. and HAFNIA INSURANCE GROUP, paid counterdefendant, Cameron General, approximately $35,966 as reimbursement for premiums for certain term life insurance covering the life of Fred Pearson.

2. As a condition for the payment described in paragraph 1 above, and pursuant to the Shareholders' Agreement, certain of the counterplaintiffs [Hafnia] were to have been named the beneficiary of the policies during the period of approximately March 1983 through September 5, 1986.

3. Counterdefendant [Cameron General] failed to properly name certain counterplaintiffs [Hafnia] as the beneficiary of certain of the life insurance policies during the period March 1983 through September 5, 1986.

4. Because counterplaintiffs [Hafnia] paid counterdefendant [Cameron General] for term life insurance premiums when counterplaintiffs were not named the beneficiary as required, counter-

defendant was unjustly enriched *** and counterplaintiff [Hafnia] seeks damages from counterdefendants [Cameron General] ***."

In its answer to the defendants' counterclaim, Cameron General denied that it had failed to name the defendants as beneficiaries of the subject policies.

On May 12, 1995, defendants filed their motion for summary judgment on Cameron General's second amended complaint and on their counterclaim. In that motion, defendants urged that the applicable period of limitations in this case is the 5-year period governing actions on unwritten contracts rather than the 10-year period governing actions on written contracts. See 735 ILCS 5/13—205, 13—206 (West 1994). In support, defendants urged that the written shareholders' agreement upon which Cameron General's claims were allegedly based was between Pearson and Hafnia Holdings and was not between Cameron General and Hafnia Holdings. Defendants argued that, hence, the subject claims were not based upon that written agreement and would therefore not invoke a 10-year but, rather, would invoke a 5-year statute of limitations. Consequently, defendants argued that because Cameron General filed its claims for reimbursement for its pre-September 5, 1986, term life insurance premium payments and office expenses on February 20, 1992, more than five years after they accrued, those claims were time barred. In addition, defendants urged that they were entitled to summary judgment on Cameron General's claim for reimbursement of life insurance premiums paid after September 5, 1986, because they properly released any and all of their interest in all relevant life insurance policies on September 5, 1986, and therefore received no benefits from any such policy after that date. Defendants also contended that they were entitled to summary judgment on their counterclaim against Cameron General, insofar as Cameron General allegedly had admitted in its supplemental answers to defendants' second set of interrogatories that it charged defendants for certain life insurance payment reimbursements and then failed to make defendants beneficiaries under the relevant policies.

In support of their motion for summary judgment with respect to Cameron General's post-September 5, 1986, claims for reimbursement, the defendants submitted, *inter alia*, a letter from Hafnia Holdings to Fred Pearson dated September 5, 1986, which stated as follows:

> "Hafnia Holdings, Inc. hereby releases any interest it may have in any life insurance contract insuring the life of Fred H. Pearson and owned by Fred H. Pearson or Cameron General Corporation ***, including but not limited to any interest Hafnia Holdings may have as a named beneficiary of any such contract."

Defendants also referred to Cameron General's response to defendants' request for admission of facts and genuineness of documents.

With respect to their counterclaim regarding Cameron General's alleged failure to name the defendants as beneficiaries on certain of the subject life insurance policies, defendants referred to Cameron General's supplemental answers to defendants' second set of interrogatories. In those answers, filed April 6, 1995, Cameron General made its first written disclosure that it had never designated any of the defendants as beneficiaries on two of the life insurance policies that Pearson was required to purchase on defendants' behalf and for which defendants had paid the premiums under the shareholders' agreement. In addition, defendants urged the nonliability of defendants Hafnia Insurance Co. and Hafnia Insurance Group (Hafnia Holding's parent companies). In support, defendants referred to Cameron General's admissions of fact wherein it admitted that no one other than Hafnia Holdings ever had an ownership interest in or derived any benefit from any life insurance policy covering the life of Fred Pearson. In that response, Cameron General also admitted that no oral or written contract ever existed between the other Hafnia defendants and Cameron General that required those defendants to reimburse Cameron General for premium payments on the subject life insurance policies.

In opposing defendants' motion for summary judgment, Cameron General argued that the timeliness of its pre-September 5, 1986, claims was governed by the 10-year statute of limitations for written contracts found in section 13—206 of the Code of Civil Procedure rather than by the 5-year statute of limitations for unwritten contracts in section 13—205. It urged that those claims were based upon the written shareholders' agreement, notwithstanding the fact that Pearson, rather than Cameron General, was the named party therein. Cameron General further argued that even if a five-year period controlled, defendants waived any statute of limitations defense thereunder pursuant to section 13—207 of the Code of Civil Procedure (735 ILCS 5/13—207 (West 1994)) by filing their counterclaim. Cameron General also argued that it suffered a loss from defendants' failure to execute a change of beneficiary form after September 5, 1986, despite defendants' contentions to the contrary. Finally, Cameron General argued that defendants' counterclaim had no merit since, according to Cameron General, its own failure to name defendants as beneficiaries in certain of the subject policies did not cause them to suffer any actual loss.

In opposing defendants' statute of limitations contention, Cameron General referred to defendants' answer, wherein defendants

admitted that in March 1983 they began to reimburse Cameron General for a portion of the premiums of the life insurance obtained by Pearson. Cameron General urges that defendants thereby in effect treated it as a party to the written shareholders' agreement. With respect to its post-September 5, 1986, claims, Cameron General submitted the affidavit of Fred Pearson, wherein Pearson averred that on September 5, 1986, defendants promised both orally and in writing to release all claims that they had on Pearson's life insurance. Pearson further averred that his insurance carrier advised him that no change of beneficiary could take place unless defendants executed the formal change of beneficiary form. Cameron General thus contends that because defendants failed to comply with their obligation to execute a change of beneficiary form, they should now remain obligated to reimburse Cameron General for the premiums paid thereon.

Prior to any ruling on defendants' motion for summary judgment and to further avert the impact of the statute of limitations defense asserted by the defendants in that motion, Cameron General filed a motion for leave to file a counterclaim and setoff against the counterclaim filed by the defendants. In that motion, Cameron General proposed that in its counter-counterclaim, it would reallege all of the allegations and requests for relief contained in counts I through IV of its second-amended complaint. As shall be discussed below, by attempting to reallege the potentially time-barred allegations of its primary complaint in the form of a counterclaim to the defendants' counterclaim, Cameron General apparently sought to invoke the protection of section 13—207 of the Code of Civil Procedure (735 ILCS 5/13—207 (West 1994)), which generally permits a defendant to file an otherwise time-barred setoff or counterclaim so long as it was timely at some point after the accrual of the action stated in the primary complaint. Cameron General would argue thereunder that by filing their counterclaim, defendants waived any statute of limitations defense to any claims brought by Cameron General in a counterclaim of its own.

On August 10, 1995, following an extended hearing, the trial court entered a written order granting defendants' motion for summary judgment on both Cameron General's complaint and on defendants' counterclaim, and denying Cameron General's motion to file a counterclaim realleging all of the allegations and relief sought in its complaint. In that order, the trial court incorporated its colloquy during the hearing which preceded the entry of its order, wherein it stated as follows:

"[With respect to] Hafnia's motion for summary judgment on the plaintiff's claims for premiums prior to September the 5th of 1986,

*** I believe that [the agreement that Hafnia was required to reimburse Cameron General for premium payments] is an oral agreement and barred by the five-year statute of limitations for oral agreements. I recognize that there is a written shareholder's agreement between Fred Pearson and Hafnia. But I think that is a significantly different matter than a written agreement between Cameron General and Hafnia *** the written shareholder agreement between Pearson and Hafnia *** does not reach [this issue]. *** [A]s to the office expense claim of Cameron General, I find it is also time barred. It's not in writing. There's a five-year statute of limitations for oral contracts. It *** was not brought within five years. *** As to the claims for premiums paid after September 5th, 1986, I'm also going to dismiss that claim *** [because] after September 5th, 1986, [Hafnia] had no interest in Cameron General, and no interest in Mr. Pearson ***. Insofar as Hafnia's counterclaim *** [regarding its payment of premiums on policies in which it was not named as a beneficiary], I think Hafnia is entitled to that money back."

With respect to Cameron General's motion seeking leave to file a counterclaim or set off, the trial court stated as follows:

"Insofar as the plaintiff's motion to seek a counterclaim or set off, the purpose of this seems odd and unusual because the plaintiff could and does have within its complaint the same allegations. The purpose of it clearly is to take advantage of 5/13—207 [(735 ILCS 5/13—207 (West 1994))], which allows a party to plead and set off on a counterclaim barred by the statute of limitations. *** [But it] cannot be used to revitalize a complaint already barred by the statute of limitations."

In its August 10, 1995, order, the trial court reserved entry of the actual amounts due and owing until August 15, 1995, to permit the parties to come to an agreement as to the accrued amounts. On August 15, the trial court thereupon entered its final order as to the amounts due and owing and therein incorporated by reference its August 10, 1995, order in its entirety. Cameron General now appeals from those orders. For the following reasons, we affirm in part, reverse in part and remand for proceedings in accordance herewith.

## DISCUSSION

■ It is well established that a motion for summary judgment may be granted properly when "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2—1005 (West 1992); *e.g., Torres v. City of Chicago*, 261 Ill. App. 3d 499,

632 N.E.2d 54 (1994). In a ruling on a motion for summary judgment, the trial court must construe the pleadings, depositions and affidavits in the light most favorable to the nonmoving party. *E.g., First State Insurance Co. v. Montgomery Ward & Co.*, 267 Ill. App. 3d 851, 642 N.E.2d 715 (1994); *Stephen v. Swiatkowski*, 263 Ill. App. 3d 694, 635 N.E.2d 997 (1994). Moreover, if fair-minded persons could draw different inferences from the undisputed facts, summary judgment should not be granted. See *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 607 N.E.2d 1204 (1992); *Anglin v. Oros*, 257 Ill. App. 3d 213, 628 N.E.2d 873 (1994). Appellate review of an order granting summary judgment is *de novo*. *E.g., Hesselink v. R.L. Perlow Corp.*, 265 Ill. App. 3d 473, 637 N.E.2d 575 (1994); *La Salle National Bank v. Skidmore, Owings & Merrill*, 262 Ill. App. 3d 899, 635 N.E.2d 564 (1994); *Myers v. Health Specialists, S.C.*, 225 Ill. App. 3d 68, 587 N.E.2d 494 (1992).

■ Cameron General next contends[1] that, in any event, even if a five-year statute of limitations would apply to the pre-September 5, 1986, claim for reimbursement of expenses and premium payments in its complaint, defendants waived any such defense under section 13—207 of the Code of Civil Procedure (735 ILCS 5/13—207 (West 1994)) by filing a counterclaim to Cameron General's complaint. Section 13—207 provides in pertinent part as follows:

> "Counterclaim or set-off. A defendant may plead a set-off or counterclaim barred by the statute of limitation, while held and owned by him or her, to any action, the cause of which was owned by the plaintiff or person under whom he or she claims, before such set-off or counterclaim was so barred, and not otherwise." 735 ILCS 5/13—207 (West 1994).

Pursuant to this provision, a defendant is allowed to file a counterclaim even though, if no suit had been commenced by the plaintiff,

---

[1]Because of the page limitation imposed under the revision of Supreme Court Rule 23 (166 Ill. 2d R. 23), we must omit from the published portion of this decision our discussion of the first issue as to whether the applicable period of limitation with respect to Cameron General's pre-September 5, 1986, claims is 5 years as applied to an oral agreement or 10 years as applied to a written agreement. See 735 ILCS 5/13—205, 13—206 (West 1994). We concluded that the five-year period applies, since the written shareholders' agreement, on its face, is between Pearson and Hafnia Holdings. Consequently, the applicability of that agreement to Cameron General can only be established, if at all, through parol evidence. For a full discussion of this issue, see the full, unabridged text of this decision on file with the clerk of this court under docket No. 1—95—3221.

defendant's claim would have been time-barred. See generally *Dignan v. Midas-International Corp.*, 65 Ill. App. 3d 188, 192, 382 N.E.2d 559, 562 (1978). Under section 13—207, a party waives its statute of limitations defense against a setoff or counterclaim brought by his opponent, even if the counterclaim is not related to the claims in his primary complaint, as long as the counterclaim was not barred when the cause of action forming the basis of the claims in the primary complaint arose. See generally *In re Estate of Rice*, 154 Ill. App. 3d 591, 507 N.E.2d 78 (1987); *Ogg v. City of Springfield*, 121 Ill. App. 3d 25, 458 N.E.2d 1331 (1984); 3 R. Michael, Illinois Practice §§ 18.4, 25.4 (1989). Moreover, where an otherwise time-barred counterclaim is filed pursuant to section 13—207, it remains viable and impervious to a statute of limitations defense, even where the original complaint is otherwise dismissed with prejudice. See *Ogg*, 121 Ill. App. 3d at 34, 458 N.E.2d at 1337 ("Section 13—207 does not contain a requirement that the claim which initiates the waiver must be successful or withstand a motion to dismiss in order for the waiver to remain in effect. *** The clause *does not* contain a provision which closes the door if the initiating party's claim is later dismissed. In sum, once the statute of limitations is waived, it remains waived even if the claim which triggered the waiver is later dismissed." (Emphasis in original)).

The stated purpose of section 13—207 is to prevent plaintiffs from intentionally filing their claims as late as possible in order to preclude defendants from a reasonable opportunity to file their counterclaim within the original limitations period. See *Dignan*, 65 Ill. App. 3d 188, 382 N.E.2d 559. As noted by the court in *Dignan*:

"Under the statute, a plaintiff is prevented from delaying his filing so that, while his pleading comes within the time period of the statute of limitations, any counterclaim that the defendant might seek to file in response would be outside the period and therefore barred." *Dignan*, 65 Ill. App. 3d at 192, 382 N.E.2d at 562.

See also 3 R. Michael, Illinois Practice § 25.4 (1989) (citing *Dignan* as indicating the purpose of section 13—207).

Based upon the foregoing principles, Cameron General urges that it may properly invoke section 13—207 to prevent its own complaint from being time-barred based simply on the fact that defendants filed a counterclaim. Cameron General further (and alternatively) urges that the trial court erred in denying its motion to refile the allegations of its dismissed complaint in a counter-counterclaim to defendants' counterclaim under section 13—207. Unlike the more usual circumstances where section 13—207 is invoked in order to defend the timeliness of a counterclaim filed against claims initiated

by the plaintiff (see, *e.g., Ogg*, 121 Ill. App. 3d 25, 458 N.E.2d 1331; *In re Estate of Rice*, 154 Ill. App. 3d 591, 507 N.E.2d 78 (1987)), in the instant case, it is the plaintiff that is attempting to invoke section 13—207 and to apply it to save its own untimely action that it initially filed against the defendants. Cameron General urges that, nevertheless, the decisions in *Merrill v. Merrill*, 215 Ill. App. 602 (1919), and in *Viland v. James E. McElvain, Inc.*, 103 Ill. App. 3d 318, 431 N.E.2d 75 (1982), support its contention that by filing their counterclaim, defendants waived their statute of limitations defense to plaintiff's complaint or, alternatively, to plaintiff's filing of a counter-counterclaim to defendants' counterclaim.

In *Merrill*, the plaintiff was the defendant's employee and sued the defendant for back pay. In response, the defendant filed a setoff against the plaintiff, claiming that the plaintiff had actually been overpaid during the period in question. The defendant also argued that part of the plaintiff's action was barred by a five-year statute of limitations. The trial court rejected the defendant's claim that the plaintiff's primary action was barred by the statute of limitations. Citing to a predecessor statute of section 13—207 having essentially the same language, the *Merrill* court affirmed. The *Merrill* court reasoned that because the defendant's setoff involved questions regarding the same payment periods that were the subject of the plaintiff's primary action, the defendant could not expect to have his own time-barred counterclaim preserved and yet also preclude the plaintiff from presenting his case on the very same issues. Thus, under *Merrill*, the mere filing by the defendants of an otherwise time-barred counterclaim preserves the viability for limitations purposes of the plaintiff's primary action.

In *Viland*, the plaintiff, a material and labor supplier, brought suit against the defendant, a contractor, for payments due on a road project known as the "Collins" project. Earlier, that same plaintiff brought suit against that same defendant for unpaid bills in connection with a road project known as the "Griswold" project, which suit was dismissed on statute of limitations grounds. In *Viland*, the defendant, by counterclaim, sought to recover for work done improperly with respect to the Griswold project. In response, the plaintiff moved for leave to file a setoff and counterclaim with respect to that Griswold project, notwithstanding the earlier dismissal of its Griswold suit on statute of limitations grounds. The trial court denied the plaintiff leave to resurrect its dismissed Griswold lawsuit by way of counterclaim.

On appeal, the trial court's denial was reversed. Applying a predecessor statute to section 13—207 (see Ill. Rev. Stat. 1979, ch. 83,

par. 18), the *Viland* court stated that by filing its Griswold counter-claim, the defendant waived any statute of limitations defense to plaintiff's proposed setoff to that counterclaim. The *Viland* court stated that the dismissal for purposes of statute of limitations was not an adjudication on the merits, and that by filing its Griswold counterclaim, the defendant waived any statute of limitations defense which was validly asserted to the plaintiff's complaint when it was filed in the earlier action. In so ruling, the court stated as follows:

> "The plaintiff's claim based on the Griswold Project was barred by the Illinois statute of limitations. However, the very same statute provides a remedy for time barred claims in that they may be pleaded as a setoff and counterclaim. Clearly such remedy is available to plaintiff Viland. ***
>
> When plaintiff's claim against defendant McElvain on the Griswold Project was dismissed because it was not commenced within the time provided by the Illinois statute of limitations, the dismissal was not an adjudication on the merits of the claim. Defendant McElvain waived the bar of the statute by filing a claim on the Griswold Project in the form of a counterclaim in plaintiff Viland's suit based on the Collins Road Project. Thus, it was error to deny plaintiff Viland's statutory right to file his Griswold Project claim as a setoff or counterclaim." *Viland*, 103 Ill. App. 3d at 320, 431 N.E.2d at 77.

Thus, under *Viland*, defendants' filing of an otherwise time-barred counterclaim permits the refiling of plaintiff's primary time-barred action as a counter-counterclaim under the express provisions of section 13—207 upon which defendants had relied to preserve the counterclaim which they had filed.

We agree that under the holdings of *Merrill* and *Viland*, where a defendant relies upon section 13—207 to bypass the time bar of the claims stated in his counterclaim, it would be unfair and unwarranted to nevertheless permit it to defeat the claims in the plaintiff's complaint by reason of the passing of the same statute of limitations. Consequently, to the extent that the defendants in this case have relied upon the filing of the plaintiff's action in order to preserve the viability of their counterclaim, the decision in *Merrill* would revive or resuscitate Cameron General's complaint. In the alternative, the holding in *Viland* would require the trial court to permit Cameron General to pour over the time-barred allegations of its complaint into a counter-counterclaim. It is clear that, in this case, the counterclaim purports to seek recovery for payments made during the same period and for the same policies that were the subject of the plaintiff's primary complaint. Consequently, Cameron General would urge that defendants would have been forced to rely upon section 13—207 to

save their counterclaim from falling to the statute of limitations which they have invoked against the plaintiff's primary action in the event that their counterclaim would have been challenged under the applicable statute of limitations. In the event of such reliance, the decision in *Merrill* would militate for the survival of the actions in Cameron General's primary complaint or, in the alternative, the decision in *Viland* would require the trial court to permit Cameron General to resubmit the allegations of its time-barred primary complaint in the form of a counterclaim. See also the Arizona decision of *Connor Live Stock Co. v. Fisher*, 32 Ariz. 80, 255 P. 996 (1927), which cites the *Merrill* case in Illinois and makes a point of articulating as its rationale the unfairness of permitting an otherwise time-barred counterclaim to survive because of the filing of the complaint and yet denying the plaintiff the right to maintain the viability of the complaint in the face of that time-barred counterclaim. In stating this rationale, the *Fisher* court stated as follows:

> "It has also been held that the interposition of an inconsistent defense is equivalent to a waiver. [Citations.] Among these inconsistent defenses is the filing of a plea of set-off which is not limited to the time within the statutory period before the institution of the suit. *Merrill v. Merrill, supra.*
>
> *** We think *** that the same conclusion should be reached [here] in the absence of [an Arizona] statute as a matter of equity and common sense. It would be unjust indeed to permit defendant to claim the benefit of the statute of limitations against plaintiff's suit, while presenting items arising out of the same transactions and barred by the same statute as a matter of set-off. It cannot blow both hot and cold with the same breath." *Fisher*, 32 Ariz. at 87, 255 P. at 998.

However, defendants urge that the allegations in their counterclaim need not look to section 13—207 for their survival because the cause of action in that counterclaim had been fraudulently concealed by Cameron General until its disclosure in Cameron General's supplemental answers to defendants' second set of interrogatories, which were filed on April 6, 1995. Defendants contend that, in those answers, Cameron General for the first time admitted that it had not named defendants as beneficiaries in two of the subject life insurance policies and that, therefore, the pre-September 5, 1986, claims in defendants' counterclaim were not time-barred when that pleading was filed in 1992. Consequently, defendants urge that the holdings in *Merrill* and *Viland* do not apply since both of those cases involved counterclaims which themselves would not have survived but for the fact that they were saved by section 13—207 or its predecessor

statues. We agree that the decisions in *Merrill* and *Viland* should be restricted to their facts and underlying rationale to instances where the first counterclaim would itself have been time-barred but for section 13—207 or its analogous predecessor provisions. The court in *Merrill* has expressly included this limitation in its rationale, when, in discussing its reliance upon the earlier decision of *Brown v. Miller*, 38 Ill. App. 262 (1890), it stated:

> "[W]hen a defendant avails himself of this section by pleading a set-off that is barred, he opens up on both sides the barred claims between himself and the plaintiff." *Merrill*, 215 Ill. App. at 606.

See also *Fisher*, 32 Ariz. 80, 255 P. 996. While the court in *Viland* did not articulate this rationale, the facts in that case involved a counterclaim that would clearly have been time-barred but for the operative impact of section 13—207. It was only in that context that the court there permitted the plaintiff to replead his dismissed complaint as a counterclaim.

■ ■ Cameron General, however, disputes factually that there was any fraudulent concealment in this case and points to the fact that defendants were aware of the cause of action raised in their counterclaim at the time of its filing in 1992, three years before Cameron General's alleged first disclosure of that cause of action in its supplemental answers to defendants' second set of interrogatories in 1995. Section 13—215 of the Code of Civil Procedure (735 ILCS 5/13—215 (West 1994)) provides that where a cause of action has been fraudulently concealed, a party may commence an action on that cause of action at any time within five years after he has discovered it. Whether the facts here are sufficient to establish a fraudulent concealment is a question of fact that must be established by the trier of fact. See generally *Hauk v. Reyes*, 246 Ill. App. 3d 187, 616 N.E.2d 358 (1993) (whether fraudulent concealment exists is issue of fact precluding summary judgment). Accordingly, summary judgment on this issue is inappropriate since it is undisputed that, without a finding of fraudulent concealment, defendants would have to rely on section 13—207 to sustain the viability of their counterclaim against a statute of limitations defense. In that event, under the plain language of section 13—207, as construed in *Viland*, Cameron General would be entitled to pour over the time-barred actions in its primary complaint into a counter-counterclaim, and under *Merrill*, the necessity of such a pour over would be obviated. Notwithstanding the foregoing, we do not preclude the trial court upon reanalysis from granting defendants' motion for summary judgment with respect to the claims against defendants Hafnia Insurance Group and Hafnia Insurance Company, if, as the record would ap-

pear to reflect, there is no basis to hold these defendants directly or vicariously liable to the plaintiff notwithstanding the issues of fact which do exist with respect to Hafnia Holdings.

■ Cameron General next contends that the trial court erred in granting defendants' motion for summary judgment on Cameron General's post-September 5, 1986, claims for reimbursement of its premium payments for Pearson's life insurance. In support, Cameron General argues that defendants' failure to execute a change of beneficiary form on September 5, 1986, caused defendants to unjustly benefit from Cameron General's premium payments after that date. According to Cameron General, the release that Hafnia Holdings executed of its rights under the subject life insurance policies was not effective to prevent defendants' unjust benefit under those policies. We disagree.

As noted, on September 5, 1986, Hafnia Holdings executed a release of its interests in all of the policies in which it was named as a beneficiary, as follows:

> "Hafnia Holdings, Inc. hereby releases any interest it may have in any life insurance contract insuring the life of Fred H. Pearson and owned by Fred H. Pearson or Cameron General Corporation ***, including but not limited to any interest Hafnia Holdings may have as a named beneficiary of any such contract."

By formally disclaiming any rights to the proceeds in the subject policies, defendants precluded themselves from claiming any benefit to those proceeds under the policies. Even if Pearson had died during their effective period, defendants would have had no legal right to retain any proceeds that they may have received under those policies. Simply because Pearson's life insurers might not have viewed Hafnia Holdings' release as effective to remove defendants as a beneficiary of the subject policies does not signify that defendants legally possessed any actual legal benefit under those policies during the period in question in view of the foregoing release. Moreover, Cameron General did not suffer any damages from defendants' failure to formally execute a change of beneficiary form, except for the highly speculative, contingent, and merely potential inconvenience of having to enforce Hafnia Holdings' release if Pearson had died during the relevant period and if, in addition, defendants collected the insurance proceeds and insisted upon keeping them.

■ Cameron General lastly contends that the trial court erred in granting summary judgment on defendants' counterclaim. As noted, in their counterclaim, defendants sought reimbursement of the premiums that they paid on two of Pearson's life insurance policies, acquired pursuant to the shareholders' agreement, on which Cam-

eron General, and not defendants, was the designated beneficiary. Cameron General urges that defendants suffered no loss from Cameron General's failure to designate defendants as beneficiaries on those two policies. We agree. It is undisputed that the proceeds of these policies were earmarked for the use of defendants to fund a buyout of Pearson's shares in Cameron General from his estate in the event of his death. Therefore, defendants would have had a clear right to recover the proceeds from those policies even though not formally designated as beneficiaries, just as Hafnia Holdings' September 5, 1986, release would have guaranteed Cameron General's receipt of any policy proceeds in the event of Pearson's death after that date, as discussed above.

Defendants nevertheless would urge that Cameron General's failure to designate them as beneficiaries on the two policies in question caused defendants to suffer an actual loss. In support, the defendants argue that since Cameron General was the nominal beneficiary on those policies, if Pearson had died, Cameron General would have received the policy proceeds and its stock value would have increased correspondingly. According to the defendants, the purchase price to Hafnia Holdings of Pearson's remaining Cameron General stock would have thereby been increased, thus diminishing the actual value of the coverage for which defendants had reimbursed Cameron General. We fail to see the merit of that contention.

The shareholders' agreement would have precluded Pearson's estate from charging Hafnia Holdings a higher price for its remaining shares under such circumstances. As noted, that agreement defined the purchase price for the remaining Cameron General shares as "the greater of (i) 150% of the Net Book Value per Share [at the time of Pearson's death] or (ii) the price per share proposed to be paid for such shares by a proposed bona fide purchaser/purchasers." The shareholders' agreement clearly required Pearson to hold Pearson's life insurance proceeds for Hafnia Holdings' benefit. Thus, Cameron General could not in any event have reflected its receipt of any such insurance proceeds as anything but a pass-through asset held for the benefit of Hafnia Holdings, since it was obligated to pay that money over to Hafnia Holdings. See generally *Suttles v. Vogel*, 126 Ill. 2d 186, 533 N.E.2d 901 (1988) (constructive trust is created when party is in possession of wrongfully acquired property because it would be inequitable for that party to retain possession of the property); *Frederickson v. Blumenthal*, 271 Ill. App. 3d 738, 648 N.E.2d 1060 (1995). Therefore, the purchase price of the remaining Cameron General shares that Hafnia Holdings would have had to pay would not necessarily have been affected by Cameron General's failure to name any

of the defendants as a beneficiary on the life insurance policies in question.

For the foregoing reasons, the summary judgment of the circuit court of Cook County in favor of the defendants is affirmed with respect to Cameron General's post-September 5, 1986, claims for relief and is reversed and remanded for further proceedings in accordance herewith with respect to all other claims of the plaintiff and with respect to the counterclaim of the defendants.

Affirmed in part and reversed and remanded in part.

COUSINS, P.J., and LEAVITT, J., concur.