2020 IL App (1st) 191777-U

No. 1-19-1777

Second Division
December 22, 2020

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| GEORGE SIANIS and SPYRIDON THEODORAKIS, | ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiffs-Appellants, | ) ) | |
| v. | ) ) | No. 14 CH 09961 |
| ASIF SAYEED, Individually and as President of Vital Home & Healthcare Incorporated, an Illinois Corporation, | ) ) ) ) | Honorable |
| Defendant-Appellee. | ) ) | Patrick J. Sherlock Judge, presiding. |

JUSTICE COBBS delivered the judgment of the court.
Presiding Justice Fitzgerald Smith and Justice Lavin concurred in the judgment.

**ORDER**

¶ 1    *Held*:  Reversed and remanded. The circuit court erred in granting summary judgment where defendant waived his statute of limitations defense by filing a counterclaim.

¶ 2    Plaintiffs, George Sianis and Spyridon Theodorakis, appeal from the circuit court's orders granting summary judgment in favor of defendant, Asif Sayeed and denying their motion to reconsider and leave to file a fourth amended complaint. On appeal, plaintiffs argue that the circuit

court erred in granting summary judgment for defendant on the basis that their claim for dilution of shares was barred by the statute of limitations. Plaintiffs also contend that defendant waived the statute of limitations defense by filing a counterclaim. Plaintiffs further assert that the circuit court improperly denied their motion to reconsider and for leave to file a fourth amended complaint. For the reasons that follow, we reverse and remand.

¶ 3                                          I. BACKGROUND

¶ 4      Plaintiffs own stock in Vital Home & Healthcare, Inc. (Vital), an Illinois corporation that provides home healthcare services. On or about November 1, 1997, pursuant to a stock purchase agreement, plaintiffs sold 90% of their shares in Vital to First American Group, Inc. (First American), a corporation wholly-owned by defendant. As a result of the sale, defendant became a majority shareholder in Vital.[1] Plaintiffs became minority shareholders, with each plaintiff retaining 5% ownership of Vital's shares.

¶ 5      On June 19, 2003, Donald J. Kindwald, counsel for Vital, sent a notice to plaintiffs informing them that defendant had made a cash infusion of $942,907 to Vital. Plaintiffs received the letter on or around that date. The letter stated that defendant "was forced to make [this] capital contribution" so that Vital "could remain as a viable and functioning entity" during the previous business year. Given that Vital was "unable to reimburse [defendant]," Kindwald instructed that plaintiffs had two options. The first option was for plaintiffs to each reimburse "$47,145.35 for a total of $94,290.70" to defendant. The second option was to hold a special shareholders' meeting for the purpose of issuing additional shares of stock to defendant to compensate him for the capital contribution, thereby diluting plaintiffs' ownership interests.

---

[1] Along with being Vital's majority shareholder, defendant also served as its President.

¶ 6 On September 4, 2003, a special meeting of shareholders was held. Minutes from the meeting showed that plaintiffs were not present in person, but "notice was given to them on August 22, 2003 by both regular and certified mail." By vote of the shareholders present, an additional 235,727 shares of the corporation were issued to the defendant in return for his capital contribution. On September 27, 2004, Vital filed its "Articles of Amendment" with the Illinois Secretary of State, which reflected issuance of these additional shares and a "paid-in capital" increase from $1,000 to $943,907. A "Cumulative Report of Changes in Issued Shares and in Paid-In Capital" was also filed with the Illinois Secretary of State and reflected the same changes as the Articles of Amendment.

¶ 7 On June 13, 2014, plaintiffs filed a complaint (First Complaint) against defendant and Vital seeking to "compel examination of corporate records and equitable accounting." Plaintiffs alleged that they "made this request because they have not seen any corporate records for [Vital] or been provided with any notices from [defendant] since the original date of sale [of the stocks]" and because of "[d]efendant's claim that [plaintiffs] own a fraction of a percent rather than their combined 10% (5% respectively) of the shares that they actually own in the corporation." Additionally, plaintiffs sought an "equitable accounting," arguing that such relief was necessary as defendant and Vital refused plaintiffs' requests for access to the corporate financial records and because defendant "breached his fiduciary duties towards the [plaintiffs] by failing to distribute monies[,] *** paying their share of those monies to him or others not entitled to the shares, and purportedly diluting their ownership interest without notice or justification."

¶ 8 Relevant to this appeal, however, is plaintiff's third amended complaint which was filed on March 7, 2017 and sought judgment against defendant in the amount of $50,000, plus punitive damages and costs. Unlike the first complaint, the third amended complaint solely alleged breaches

of fiduciary duty by defendant,[2] including, *inter alia*, failing to fully account for Vital's profits, failing to distribute profits, paying "excessive and unreasonable salaries, bonuses, rents[,]" and management fees to himself and others, unilaterally modifying or diluting plaintiffs' ownership interests without notice, creating various competing entities, and misappropriating corporate opportunities.

¶ 9     On May 11, 2017, defendant answered the complaint. On November 14, 2018, the circuit court granted defendant's motion for leave to file affirmative defenses and a counterclaim. That same day, defendant filed his affirmative defenses asserting that plaintiffs' claims were barred under the doctrine of *laches* and the statute of limitations. Defendant also filed a counterclaim, asserting that he was entitled to a "set-off of all monies he contributed, whether as a capital contribution or as a loan to Vital in excess of monies contributed by the [p]laintiffs, individually or in the aggregate, to Vital since [defendant] became a shareholder." Plaintiffs moved to dismiss defendant's affirmative defenses and counterclaim.

¶ 10    On March 5, 2019, the circuit court entered an order: (1) denying plaintiffs' motion to dismiss the affirmative defense of statute of limitations pursuant to section 2-619 of the Illinois Code of Civil Procedure (Code) (735 ILCS 5/2-619 (West 2018)); (2) granting plaintiffs' motion to dismiss the affirmative defense of *laches* pursuant to section 2-619 of the Code, with leave to replead; and (3) granting plaintiffs' motion to dismiss the counterclaim for a set-off pursuant to section 2-615 of the Code (735 ILCS 5/2-615 (West 2018)). That same day, the circuit court entered a case management order providing a completion date for discovery and depositions.

---

[2] The complaint failed to identify the cause of action. As such, the circuit court "assume[d] it [was] a single count for Breach of Fiduciary Duty."

¶ 11    Plaintiffs, Sianis and Theodorakis were deposed on March 13 and 15, 2019, respectively. At his deposition, Sianis testified that plaintiffs were aware from May 2, 2008 that their ownership interests had been diluted and had discussed this dilution. Both plaintiffs admitted receiving the June 19, 2003 letter but denied receiving notice of the special shareholders' meeting. At his deposition, Theodorakis testified that he "did not believe a word of [the June 2003 letter]" because "the credibility of defendant *** [was] very small if at all." Plaintiffs never asked to inspect any of the books and records of Vital and never made a request for any of Vital's tax returns prior to 2013.

¶ 12    On May 30, 2019, defendant filed his motion for summary judgment based on the statute of limitations. The motion pertained to plaintiffs' claim that defendant breached his fiduciary duty by "unilaterally [increasing] the authorized share capital in Vital, and thereby modified/diluted [plaintiffs'] ownership interest[s]." Defendant argued that plaintiffs' claim for breach of fiduciary duty was subject to and barred by the five-year statute of limitations period. Defendant further argued that the "discovery rule" exception to the statute of limitations did not apply or "save [plaintiffs'] action from being time-barred" because plaintiffs "were at least aware of enough facts surrounding their alleged injuries (*i.e.*, share dilution) so as to put them on inquiry notice more than five years prior to the commencement of this action."

¶ 13    In support of his motion for summary judgment, defendant submitted his affidavit. In his affidavit, defendant stated that attorney Kindwald had sent a letter to plaintiffs informing them of the cash infusion. The letter provided that "absent payment [to defendant of] a specified sum," a special shareholders meeting would be held "for the purposes of issuing additional shares of Vital stock." Defendant averred that plaintiffs "ultimately failed to make [payments]" and as such, he sent plaintiffs a notice of the special shareholder meeting. Defendant further claimed that plaintiffs

were on notice of the dilution of their shares as attorney Kindwald had reiterated this in a letter concerning settlement negotiations in separate lawsuit between the parties.

¶ 14   Defendant was deposed on June 6, 2019. At his deposition, defendant testified that he made a capital contribution or loan to Vital in the amount of $942,907 in the year 2000. This loan was documented on Vital's federal income tax return as "paid in capital." Defendant testified that the tax returns showed that "there [were] mortgages, notes, bonds payable in less than one year in the amount of $746,304 at the beginning of 2000" but no "mortgages, notes or bonds payable in less one year at the end of the year 2000." Defendant acknowledged that he did not prepare the notice for the special shareholders' meeting.

¶ 15   On June 13, 2019, plaintiffs filed a response to defendant's motion for summary judgment. Plaintiffs argued, *inter alia*, that they were unaware the dilution was wrongful, the statute of limitations was tolled because defendant fraudulently concealed material facts regarding the transaction, and defendant waived his "affirmative defense based on the statute of limitations by filing a counterclaim that seeks relief that would be time barred were it not requested in a counterclaim." In support, plaintiffs submitted their affidavits. In his affidavit, Sianis acknowledged receipt of the June 19, 2003 letter. Sianis averred he did not know the letter's statement that defendant "was forced to make a capital contribution" was false at that time. At some point prior to May of 2008, Sianis became aware that defendant was claiming he diluted the shares. In his affidavit, Theodorakis acknowledged that he received and reviewed the June 2003 letter. However, at that time, he was also unaware that the letter's statement regarding defendant's capital contribution was false. "[W]hile the June 19, 2003 [l]etter indicated that [his] shares would be diluted if [he] did not make [payment]," Theodorakis "believed that this was merely an attempt

to extract money from [him]." He first learned that defendant was claiming that his "shares were actually diluted *** in the year 2013."

¶ 16    On July 10, 2019, the circuit court granted defendant's motion for summary judgment. In its written order, the court stated that defendant's counterclaim "[did] not constitute a waiver of the statute of limitations and the savings clause is inapplicable." Thus, the court rejected plaintiffs' argument that defendant was precluded from asserting a statute of limitations defense by virtue of filing a counterclaim. On the same day, plaintiffs filed a motion to voluntarily dismiss without prejudice their remaining claims against the defendant. On July 12, 2019, the circuit court granted the motion.

¶ 17    On August 8, 2019, plaintiffs filed a motion to reconsider the summary judgment order and a motion for leave to file a fourth amended complaint to address any defects in their prior complaint. Specifically, plaintiffs sought to set forth factual allegations supporting application of the discovery rule and the doctrine of fraudulent concealment. On August 22, 2019, the circuit court denied both motions. Plaintiffs appealed.

¶ 18                                II. ANALYSIS

¶ 19    On appeal, plaintiffs argue that the circuit court erroneously granted defendant's motion for summary judgment on the basis that the statute of limitations barred plaintiffs' claim for dilution their shares because: (1) defendant waived this defense by filing a counterclaim; (2) a question of fact exists as to when plaintiffs learned that their injury was wrongfully caused; and (3) a question of fact exists as to whether defendant fraudulently concealed this cause of action from them. Plaintiffs further assert that the circuit court erred in denying their subsequent motion to reconsider and leave to file a fourth amended complaint.

¶ 20                                A. Jurisdiction

¶ 21 As an initial matter, we must address our jurisdiction over the instant appeal. Although the parties concede in their briefs that there is no jurisdictional issue, we have an independent duty to evaluate our jurisdiction. *People v. Lewis*, 234 Ill. 2d 32, 36 (2009). The notice of appeal filed in this case provides that plaintiffs are appealing from (1) the circuit court's July 10, 2019 order granting partial summary judgment for defendant and (2) the August 22, 2019 order denying plaintiff's motion to reconsider and leave to file a fourth amended complaint. At issue is whether the circuit court's July 10, 2019 order constitutes a final and appealable order.

¶ 22 Generally, "[e]very final judgment of a circuit court in a civil case is appealable as of right." Ill. S. Ct. R. 301 (eff. Feb. 1, 1994). A judgment or order is " 'final' if it disposes of the rights of the parties, either on the entire case or on some definite and separate part of the controversy." *Dubina v. Mesirow Realty Dev.*, 178 Ill. 2d 496, 502 (1997) (quoting *Village of Niles v. Szczesny*, 13 Ill. 3d 45, 48 (1958)). Where "multiple claims for relief are involved in an action, an appeal may be taken from a final judgment as to one or more but fewer than all of the *** claims only if the trial court has made an express written finding that there is no just reason for delaying either enforcement or appeal or both." Ill. Sup. Ct. R. 304(a). "Without a Rule 304(a) finding, a final order disposing of fewer than all of the claims in an action is not instantly appealable." *Dubina*, 178 Ill. 2d at 503. The order "does not become appealable until all of the claims in the multiclaim litigation have been resolved." *Id.* As such, all final orders become appealable under Rule 301 when the entire action is terminated. *Id.*

¶ 23 An order granting a plaintiff's motion for a voluntary dismissal is deemed to be "a final and appealable order." *Depluzer v. Village of Winnetka*, 265 Ill. App. 3d 1061, 1065 (1994). However, given that "jurisdiction in the appellate court is generally limited to appeals from final judgments, the power to address a defendant's appeal from a voluntary dismissal 'does not form

the jurisdictional basis from which we may also address the substantive merits of other nonfinal orders entered by a trial court prior to the granting of a voluntary dismissal.' " *Resurgence Financial, LLC v. Kelly*, 376 Ill. App. 3d 60, 62 (2007). Therefore, "a voluntary dismissal that disposes of all remaining claims in the case makes appealable only those orders preceding the voluntary dismissal that were 'final in nature.' " *Bauman v. Patterson*, 2018 IL App (4th) 170169, ¶ 34 (quoting *Dubina*, 178 Ill. 2d at 503).

¶ 24    Here, in its July 10, 2019 order, the circuit court held that plaintiffs' claim related to the dilution of shares was barred by the statute of limitation and thus, entered partial summary judgment for defendant. The July 10, 2019 order was final in nature because it disposed of the rights of the parties on some definite and separate part of the controversy. However, the July 10, 2019 order became both final and appealable when plaintiffs voluntarily dismissed their remaining claims. See *Dubina*, 178 Ill. 2d at 503 (where a voluntary dismissal "dispos[es] of all matters pending before the circuit court, rendered all orders which were final in nature, but which were not previously appealable, immediately final and appealable.") Therefore, the July 10, 2019 order granting partial summary judgment to defendant became final and appealable when plaintiffs voluntarily dismissed their remaining claims. Accordingly, this court has jurisdiction.

¶ 25                                    B. Standard of Review

¶ 26    Prior to addressing the merits of this appeal, we must first look to the standard of review governing motions for summary judgment. Summary judgment is appropriate only where "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2018). Summary judgment is a drastic means of disposing litigation that should be granted only where the moving party's right to judgment is clear

and free from doubt. *Adames v. Sheahan*, 233 Ill. 2d 276, 295-96 (2009). The party seeking summary judgment bears the initial burden of proof; which is met when the party either affirmatively proves that an element of the case must be resolved in its favor or establishes a lack of evidence underlying the nonmoving party's case. *Bank Financial, FSB v. Brandwein*, 2015 IL App (1st) 143956, ¶ 40. Once this burden is met, the party opposing the motion "must present a *bona fide* factual issue and not merely general conclusions of law" to prevent the entry of summary judgment. *Id.* A "mere suggestion that an issue of material fact exists," is insufficient without supporting evidence. *Frederick v. Professional Truck Driver Training School, Inc.*, 328 Ill. App. 3d 472, 480 (2002). We may affirm the circuit court's ruling on a motion for summary judgment on any basis in the record, regardless of the reasoning employed by the court. *Kainrath v. Grider*, 2018 IL App (1st) 172270, ¶ 19. We review an order granting summary judgment *de novo*. *Sears, Roebuck and Company v. Acceptance Insurance Co.*, 342 Ill. App. 3d 167, 171 (2003).

¶ 27                                              C. Counterclaim

¶ 28    Plaintiffs contend that defendant waived his statute of limitations defense under section 13-207 of the Code by filing a counterclaim. Section 13-207 of the Code provides, in relevant part, as follows:

> "A defendant may plead a set-off or counterclaim barred by the statute of limitation, while held and owned by him or her, to any action, the cause of which was owned by the plaintiff or person under whom he or she claims, before such set-off or counterclaim was so barred, and not otherwise." 735 ILCS 5/13-207 (West 2018).

¶ 29    Unlike the statute of limitations, section 13-207 does not bar a claim after a specified period nor does it set a date for accrual of the claim, instead it saves otherwise barred claims. *Barragan v. Casco Design Corp.*, 216 Ill. 2d 435, 449 (2005). Illinois courts have consistently interpreted

section 13-207 of the Code as a savings provision, which allows a "defendant to file a counterclaim even if the claim would have been time-barred if brought as a separate action." *Beneficial Illinois, Inc. v. Parker*, 2016 IL App (1st) 160186, ¶ 18. To bring a time-barred counterclaim under section 13-207, "the counterclaim must not have been barred when the cause of action forming the basis of the claims in the primary complaint arose." *Barragan*, 216 Ill. 2d at 449. The main purpose of section 13-207 is to prevent a plaintiff from intentionally filing late claims or "gaining a tactical advantage by delaying his filing so that, while his pleading comes within the time period of the statute of limitations, any counterclaim would be outside the period and therefore barred." *Mermelstein v. Rothner*, 349 Ill. App. 3d 800, 804 (2004).

¶ 30    Contrary to the more common scenario where section 13-207 is invoked to defend the timeliness of a counterclaim filed by defendant, the plaintiffs in this case attempt to invoke section 13-207 to overcome any time bar on their own complaint on the basis that defendants' counterclaim was barred. Plaintiffs argue that because defendant's counterclaim appears to be a "set-off of the money he loaned to Vital" in the year 2000 and this loan appears to be due within one year, the statute of limitations on defendant's alleged loan began to run on December 31, 2001. As such, no claims based on the loan could be brought after December 31, 2011,[3] including defendant's counterclaim which was filed on November 14, 2018. Citing *Cameron General Corporation v. Hafnia Holdings, Inc.*, 289 Ill. App. 3d 495, 507 (1997), plaintiffs contend that "mere filing by defendants of an otherwise time-barred counterclaim preserves the viability for limitations purposes of the plaintiff's primary action." Relying on *Cameron*, plaintiffs argue that

---

[3] Plaintiffs point out that "while it is not clear that the loans were written or oral and whether they were subject to the five-year statute of limitations set forth in 735 ILCS 5/13-205 (West 2018) or the ten-year statute of limitations set forth in 735 ILCS 5/13-206 (West 2018), any claim based on the loans was barred by December 31, 2011 at the latest."

"where a defendant relies on section 13-207 to bypass the time bar of the claims stated in his counterclaim, it is unfair and unwarranted to nevertheless permit [the defendant] to defeat the claims in [plaintiffs'] complaint by reason of the passing of the statute of limitations." *Cameron General Corporation*, 289 Ill. App. 3d at 508. As such, plaintiffs assert that, under the plain language of section 13-207, defendant's filing of an otherwise time-barred counterclaim allows the plaintiffs to refile their primary time-barred action as a counter-counterclaim.

¶ 31    In *Cameron*, the plaintiff filed suit against defendants for breach of contract and unjust enrichment. *Cameron General Corporation*, 289 Ill. App. 3d at 497. Defendants first filed a counterclaim and then filed a motion for summary judgment as to both plaintiff's complaint and its counterclaim. *Id.* The circuit court granted the defendants' motion, finding that part of the relief sought in the complaint was barred by the statute of limitations and that "judgment was required as a matter of law in defendants' favor" with respect to the remaining counts of the complaint and defendants' counterclaim. *Id.* On appeal, the plaintiff argued that the defendants waived their statute of limitation defense by filing a time-barred counterclaim. *Id.* at 505. This court agreed. *Id.* In doing so, this court noted that "to the extent that the defendants relied upon the filing of the plaintiff's action to preserve the viability of their [own] counterclaim," it worked to "revive or resuscitate [plaintiff's] complaint. *Id.* at 508.

¶ 32    Unlike the procedural posture in *Cameron¸* the circuit court here did not grant summary judgment as to both defendant's counterclaim and his claims pertaining to the statute of limitations. The circuit court first dismissed defendant's counterclaim under section 2-615 for failure to state a cause of action. Although the court acknowledged defendant's argument that he "loaned money to Vital and made capital contributions," the court noted that devoid in defendant's counterclaim were "factual allegations of matured sums owed or due by Vital." No facts were alleged in the

pleadings to indicate that any sums were due and owing to defendant on any specific date. Months later, on July 10, 2019, the circuit court granted defendant's motion for summary judgment based on the statute of limitations.

¶ 33 Defendant argues that section 13-207 does not "save plaintiff's complaint or counterclaim, whichever iteration is considered" because defendant's counterclaim was previously dismissed by the circuit court and the record does not support the finding that "defendant's counterclaim [was] filed after it had been time-barred." We disagree. First, the record supports plaintiffs' argument that defendant's counterclaim was time-barred. In his counterclaim, defendant argues that he is "entitled to a set-off of all monies he contributed, whether as a capital contribution or as a loan to Vital in excess of monies contributed by the [p]laintiffs, individually or in the aggregate, to Vital since [defendant] became a shareholder." In his subsequent deposition, defendant stated that loans were made to Vital in the amount of $942,907. The loans were made during the years 1997 through 2000. Defendant stated that the loans were documented on Vital's tax returns and testified that Vital's tax returns for the year 2000 indicate that the loan was repayable in less than one year. As such, the record suggests that the due date of the loan was within a year. See *Bank of Chicago-Garfield Ridge v. Park National Bank*, 237 Ill. App. 3d 1085, 1091 (1992) (providing that set-off is "available only where the debts are mutual, mature, and 'of such certain and ascertainable character as to be capable of being applied in compensation of each other' "and that a debt matures on the date its due). Although it is unclear whether the loans were written or oral, and thus whether they were subject to the five-year limitations period (735 ILCS 5/13-205 (West 2018)) or the 10-year limitations period (735 ILCS 5/13-206 (West 2018)), any claim based on the loans would have been barred by the time defendant filed his counterclaim for set-off on November 14, 2018.

¶ 34    Having found defendant's counterclaim was time-barred, we now address his argument that his statute of limitation claims were not waived because the counterclaim was dismissed. Generally, "once the [s]tatute of [l]imitation is waived; it remains waived even if the claim which triggered the waiver is later dismissed." *In re Estate of Rice*, 154 Ill. App. 3d 591, 593 (1987) (quoting *Ogg v. City of Springfield*, 121 Ill. App. 3d 25, 34 (1984)). As such, where defendant waived his statute of limitation claims by filing a time-barred counterclaim, the claims remained waived despite the dismissal of the counterclaim.

¶ 35    Because the circuit court allowed defendant to both rely on section 13-207 to bypass the time bar of the claims stated in the counterclaim and at the same time permitted him to defeat the dilution claim in plaintiffs' complaint by reason of the passing of the statute of limitations, we find that section 13-207 operates to bar defendant from asserting statute of limitation claims. For purposes of section 13-207, plaintiffs' complaint has been "revived" and any claims pertaining to the statute of limitations have been waived. See *Cameron*, 289 Ill. App. 3d at 508 (citing *Viland v. James E. McElvain, Inc.*, 103 Ill. App. 3d 318, 320 (1982)) (explaining that "under *Viland*, defendants' filing of an otherwise time-barred counterclaim permits the refiling of plaintiff's primary time-barred action as a counter-counterclaim.")

¶ 36    Having determined that defendant's filing of the counterclaim waived his statute of limitations defense, we need not address plaintiffs' additional related claims in support of reversal.

¶ 37                                          III. CONCLUSION

¶ 38    For the reasons stated, we reverse the judgment of the circuit court of Cook County and remand for further proceedings.

¶ 39    Reversed and remanded.