Docket No. 90585–Agenda 22–November 2001.

THE CITY OF CHICAGO, Appellee, v. WILLIAM G.   HOLLAND, Auditor General of the State of Illinois, Appellant.

Opinion filed June 19, 2003.

JUSTICE RARICK delivered the opinion of the court:

In 1995 the General Assembly amended section 3–1 of the Illinois State Auditing Act (Auditing Act) (30 ILCS 5/3–1 (West 2000)) to include a provision directing the Auditor General of the State of Illinois to conduct a compliance and management audit of the City of Chicago (City) and any other entity regarding the operation of O’Hare International Airport (O’Hare), Midway Airport (Midway), and Merrill C. Meigs Field (Meigs) (collectively, the airports). When the Auditor General attempted perform an audit under authority of that amendment, the City sought declaratory and injunctive relief in the circuit court of Cook County to prevent the audit from proceeding. On the parties’ respective cross-motions for summary judgment, the trial court entered judgment for the City and against the Auditor General, holding that the amendment violated article VIII, section 3, of the Illinois Constitution of 1970 (Ill. Const. 1970, art. VIII, §3). The Auditor General now appeals. Because the circuit court’s judgment declared a statute of the State of Illinois invalid, the appeal was taken directly to our court. 134 Ill. 2d R. 302(a). For the reasons that follow, we affirm.

Article VIII, section 3(b), of the Illinois Constitution of 1970 (Ill. Const. 1970, art. VIII, §3(b)) provides that the Auditor General “shall conduct the audit of public funds of the State” and “shall make additional reports and investigations as directed by the General Assembly.” The General Assembly has implemented the mandates of article VIII, section 3, through enactment of the Illinois State Auditing Act (30 ILCS 5/1–1 
et seq.
 (West 2000)). 30 ILCS 5/1–2(a) (West 2000). That statute was amended in 1995 to include the following new section:

“As soon as practical after the effective date of this amendatory Act of 1995, the Auditor General shall conduct a compliance and management audit of the City of Chicago and any other entity with regard to the operation of Chicago O’Hare International Airport, Chicago Midway Airport and Merrill C. Meigs Field. The audit shall include, but not be limited to, an examination of revenues, expenses, and transfers of funds; purchasing and contracting policies and practices; staffing levels; and hiring practices and procedures. When completed, the audit required by this paragraph shall be distributed in accordance with Section 3–14.” Pub. Act 89–386, eff. August 18, 1995 (amending 30 ILCS 5/3–1 (West 1994)).

Following enactment of the amendment, the Auditor General notified the City that an audit would be conducted in accordance with the statute’s provisions. The Auditor General’s office subsequently solicited proposals for furnishing expert professional services to conduct the audit. A proposal submitted by the firm of KPMG Peat Marwick LLP (KPMG) was ultimately selected by the Auditor General.

When the auditing process commenced, the City filed this action against the Auditor General in the circuit court of Cook County. The City’s complaint, as amended, was in four counts. Counts I and II took issue with the scope of the audit. The City asserted that under the 1995 amendment to the Auditing Act and article VIII, section 3, of the Illinois Constitution (Ill. Const. 1970, art. VIII, §3), the Auditor General’s authority was limited to audits of public funds of the state. The City complained, however, that the audit of its airports would go beyond public funds of the state and would also include examinations of the use of nonstate funds at the airports and management operations or activities at the airports that are financed by nonstate funds.

In count I of its amended complaint, the City alleged that to the extent the audit embraced expenditures and operations that were not financed by public funds of the state, it was unlawful under both the 1995 amendment to the Auditing Act and article VIII, section 3, of the Constitution. Count II asserted, in the alternative, that if the 1995 amendment to the Auditing Act could be construed as allowing the Auditor General to conduct a general audit that was not restricted to the use of public funds of the state or to the management of governmental activities financed with public funds of the state, the amendment would still be unconstitutional under article VIII, section 3, of the Illinois Constitution. Count III, in turn, alleged that even if the 1995 amendment to the Auditing Act were read to permit an audit of the use of nonstate funds in connection with the operations of the City’s airports and even if such an audit did not contravene article VIII, section 3, of the Illinois Constitution, the 1995 amendment would violate the prohibition in article IV, section 13, of the Illinois Constitution (Ill. Const. 1970, art. IV, §13) against special legislation.

Count IV of the City’s amended complaint raised no constitutional claims. It took issue only with KPMG, the firm retained by the Auditor General, to conduct the audit. The City claimed that KPMG had performed or was performing services for the City and was under legal, contractual and ethical duties to maintain the confidentiality of information it had obtained from the City in the course of providing those services. The City asserted that use of KPMG to perform the audit of the airports would “violate applicable provisions of Illinois law and applicable ethical rules and would be inconsistent with the legal and contractual rights of the City.”

For its relief, the City requested a judgment declaring: (1) that the Auditor General’s authority under the 1995 amendment to the Auditing Act is limited to an examination of the use of public funds of the state by the City in connection with its airport operations; (2) that article VIII, section 3(b), of the Illinois Constitution does not authorize the General Assembly to direct the Auditor General to audit the use of nonstate funds at Chicago airports; and (3) that if the 1995 amendment to the Auditing Act were interpreted to require a general audit of the use of funds in connection with the operation of Chicago’s airports, including funds that do not qualify as public funds of the state, it would contravene article IV, section 13’s prohibition against special legislation. The City further requested issuance of an injunction barring the Auditor General from proceeding with his audit of the City’s airports and prohibiting him from using KPMG to conduct the audit.

The Auditor General answered the City’s amended complaint and asserted a counterclaim based on the City’s failure to comply with a subpoena issued in connection with the audit of the City’s airports. It subsequently filed a motion to dismiss count IV of the City’s amended complaint, which challenged the use of KPMG, on the grounds that the Auditor General’s contract with the firm had expired and KPMG would therefore not be involved with the audit of the airports. The circuit court granted that motion and dismissed count IV. The propriety of that action has not been challenged and is not an issue in this appeal.

The litigation continued over the next several years. Following conferences between the parties and the circuit court, the court entered an order in December of 1999 staying any further discovery pending resolution of any issues the parties wished to raise by way of cross-motions for summary judgment. In March of 2000, the Auditor General filed a motion pursuant to section 2–1005 of the Code of Civil Procedure (735 ILCS 5/2–1005 (West 2000)) asking the circuit court to enter summary judgment denying the relief sought by the City in its amended complaint and granting enforcement of the audit-related subpoena as sought in the Auditor General’s counterclaim. The following month, the City filed a cross-motion seeking entry of summary judgment in its favor on counts I through III of its amended complaint and against the Auditor General on his counterclaim.

In support of their respective motions, the parties submitted voluminous documentation concerning the funding of the City’s airports. The parties prepared and filed additional legal memoranda, and a hearing on the summary judgment motions was conducted on June 27, 2000. Based upon the evidence, the law and the arguments presented to it, the circuit court entered an order declaring that the Auditor General’s constitutional and statutory authority to conduct audits extends only to public funds of the state. In the case of the City’s airports, the court held “public funds of the State” consist solely of those funds directly disbursed by the state to the airports. Accordingly, the court concluded that when carrying out the audit mandated by the 1995 amendment to the Auditing Act, the Auditor General must limit himself to such funds. Based on these conclusions, the court denied the Auditor General’s motion for summary judgment and granted the cross-motion for summary judgment filed by the City.

The Auditor General subsequently moved for rehearing and clarification. That motion resulted in entry of an additional order by the circuit court. The court’s new order, dated October 13, included an express holding that the 1995 amendment to the Auditing Act is unconstitutional because it impermissibly broadened the Auditor General’s authority. Having declared the 1995 amendment invalid on that basis, the court ruled that it had no need to address the additional argument that the amendment violated the prohibition against special legislation. The court then proceeded to reiterate that it was denying the Auditor General’s motion for summary judgment and granting the cross-motion for summary judgment filed by the City.

The circuit court’s resolution of the parties’ respective motions for summary judgment entirely disposed of the litigation. The court’s order was therefore final and appealable. 
Arangold Corp. v. Zehnder
, 187 Ill. 2d 341, 358 (1999). The appeal has been taken directly to our court based on the circuit court’s determination that a statute of this state, the 1995 amendment to the Auditing Act, is invalid. 134 Ill. 2d R. 302(a).

In an appeal from the grant of summary judgment, review is 
de novo
. The purpose of summary judgment is not to try a question of fact, but to determine whether one exists. Summary judgment is proper where pleadings, depositions, admissions, and affidavits on file, when viewed in the light most favorable to the nonmoving party, reveal that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2–1005(c) (West 2000); 
Land v. Board of Education of the City of Chicago
, 202 Ill. 2d 414, 421 (2002).

In assessing whether the City of Chicago was entitled to judgment as a matter of law in the case before us, we must first consider the validity of the 1995 amendment to the Auditing Act. As with entry of summary judgment, 
the constitutionality of a statute is subject to 
de novo
 review. 
Miller v. Rosenberg
, 196 Ill. 2d 50, 57 (2001). Statutes enjoy a strong presumption of constitutionality.
 Russell v. Department of Natural Resources
, 183 Ill. 2d 434, 441 (1998). A party challenging a statute has the burden of rebutting that presumption and clearly establishing a constitutional violation. 
Flynn v. Ryan
, 199 Ill. 2d 430, 436 (2002). This court has a duty to construe a statute in a manner that upholds its validity and constitutionality if such a construction is reasonably possible. 
People v. Walden
, 199 Ill. 2d 392, 394 (2002).

The circuit court believed that the 1995 amendment to the Auditing Act was invalid because it impermissibly broadened the Auditor General’s power beyond that authorized by article VIII, section 3, of our state’s constitution (Ill. Const. 1970, art. VIII, §3). The circuit court’s view was that under the clear and unambiguous language of article VIII, section 3, the Auditor’s General auditing authority was reserved for audits of “public funds of the State.”
(footnote: 1) As the court interpreted the 1995 amendment to the Auditing Act, the legislation authorized the Auditor General to exceed that limitation and undertake audits of the City’s airports that encompassed more than “public funds of the State.” To the extent that the 1995 amendment permitted audits that were not limited to “public funds of the State,” the court reasoned, the law lacked constitutional authority and was invalid.

In assailing this conclusion, the Auditor General contends that the circuit court fundamentally misunderstood the operation of this state’s constitution. Although article VIII, section 3(b), by its terms, refers only to audits of “public funds of the State” and does not purport to authorize the Auditor General to conduct audits that go beyond “public funds of the State,” the Auditor General notes that the provision does not expressly 
prohibit
 audits that go beyond “public funds of the State” and that under our constitutional scheme, the General Assembly is free to enact any legislation it desires so long as the constitution does not specifically forbid it.

Our court regards the language in the constitution as a limitation upon the legislature’s authority, not as a grant of power. Based on that view, our court has held that the General Assembly is free to enact any legislation that the constitution does not expressly prohibit. 
Cincinnati Insurance Co. v. Chapman
, 181 Ill. 2d 65, 78 (1998). Where, however, the constitution specifically addresses the authority of constitutional officers or the power of the General Assembly to enact particular legislation, basic principles of constitutional and statutory interpretation still apply. The court must ascertain the plain and ordinary meaning of the relevant constitutional and statutory provisions in the constitutional and legislative contexts in which they appear. See 
Chicago Bar Ass’n v. Cronson
, 183 Ill. App. 3d 710, 718 (1989). Constitutional officers may not act in contravention to the constitutional and statutory authority conferred on them. See 
Chicago Bar Ass’n
, 183 Ill. App. 3d at 725. Action by a constitutional officer that is not authorized by the constitutional provisions creating his position and defining his powers or by legislation promulgated under authority of such constitutional provisions is impermissible. See 
Chicago Bar Ass’n
, 183 Ill. App. 3d at 725-26.

That being said, we do not believe that an audit conducted in accordance with the 1995 amendment to the Auditing Act would exceed the authority conferred on the Auditor General by the constitution. The position of Auditor General is created by article VIII of the constitution (Ill. Const. 1970, art. VIII), which governs state finance. Section 2(b) of article VIII provides that the General Assembly “shall make appropriations for all expenditures of public funds by the State.” Ill. Const. 1970, art. VIII, §2(b). Section 3(a) of article VIII requires the General Assembly to “provide by law for the audit of the obligation, receipt and use of public funds of the State” and establishes the position of Auditor General. Ill. Const. 1970, art. VIII, §3(a). Section 3(b) of article VIII specifies that the duties of the Auditor General include conducting “the audit of public funds of the State.” Ill. Const. 1970, art. VIII, §3(b).

To implement the provisions of article VIII, section 3, the General Assembly enacted the Auditing Act. 30 ILCS 5/1–2(a) (West 2000). The purpose of the Act is to

“provide a comprehensive and thorough post audit of the obligation, expenditure, receipt and use of public funds of the State *** to the end that the government of the State of Illinois will be accountable to the General Assembly and the citizens and taxpayers, and to the end that the constitutional and statutory requirements governing state fiscal and financial operations will be enforced.” 30 ILCS 5/1–2(b) (West 2000). 

Based upon the provisions of article VIII and the Auditing Act, our appellate court has held that “the role of the Auditor General is to conduct audits with respect to all funds appropriated or otherwise authorized by the General Assembly following the Governor’s preparation and submission of the State budget.” 
Chicago Bar Ass’n
, 183 Ill. App. 3d at 719. The 1995 amendment to the Auditing Act is consistent with that role. Contrary to the view taken by the circuit court, it does not purport to authorize the Auditor General to undertake audits that are more far-reaching. Consideration of the language used in the amendment makes that apparent.

By its terms, the amendment requires the Auditor General to perform a “compliance and management audit” of the City or any other entity with regard to the operation of the City’s airports. 30 ILCS 5/3–1 (West 2000). Under the Auditing Act, the terms “compliance audit” and “management audit” are specifically defined. 30 ILCS 5/1–13, 1–14 (West 2000). Both are types of “post audits.” Post audits are “post facto examination[s] of books, documents, records, and other evidence relating to the obligation, receipt, expenditure or use of
 public funds of the State
 ***.” (Emphasis added.) 30 ILCS 5/1–12 (West 2000). The audit mandated by the 1995 amendment to the Auditing Act therefore does not exceed the Auditor General’s constitutional authority. He is charged by the constitution with auditing public funds of the state, and public funds of the state are what he is expressly called upon to audit by the 1995 amendment.

Because the audit required by the 1995 amendment pertains to public funds of the state and because article VIII, section 3(b), of the Illinois Constitution charges the Auditor General with responsibility for auditing public funds of the state, the circuit court was wrong to declare, in its amended order, that the 1995 amendment was invalid on the grounds that it exceeded the permissible bounds of article VIII. The circuit court’s analytical error, however, does not end our inquiry. What is before us on review is the trial court’s judgment, not the reasoning the court employed. 
Material Service Corp. v. Department of Revenue
, 98 Ill. 2d 382, 387 (1983). Our function is to determine whether the trial court reached the proper result. The reasons given by a lower court for its decision or the findings on which a decision is based are not material if the judgment is correct. See 
Board of Managers of Dominion Plaza One Condominium Ass’n No. 1-A v. Chase Manhattan Bank, N.A.
, 116 Ill. App. 3d 690, 694 (1983). As a reviewing court, we can sustain the decision of the circuit court on any grounds which are called for by the record regardless of whether the circuit court relied on the grounds and regardless of whether the circuit court’s reasoning was sound. 
Bell v. Louisville & Nashville R.R. Co.
, 106 Ill. 2d 135, 148 (1985).

Although the circuit court in this case erred in declaring the 1995 amendment to the Auditing Act invalid, we believe that the court was nevertheless correct in granting summary judgment in favor of the City and against the Auditor General to prevent the Auditor General from enforcing his subpoenas and proceeding with the audit of the City’s airports. As we have just discussed, the reason the 1995 amendment to the Auditing Act does not contravene article VIII, section 3(b), of the constitution is that the type of audits it authorizes are post audits, which are limited, by the terms of the Auditing Act, to examination of materials “relating to the obligation, receipt, expenditure or use of public funds of the State.” 30 ILCS 5/1–12 (West 2000). The Auditing Act does not specifically define the phrase “public funds of the State.” It merely provides that the phrase has the meaning ascribed to it in article VIII of the constitution. 30 ILCS 5/1–18 (West 2000). Our appellate court, however, has construed the pertinent constitutional and statutory provisions to mean that the funds the Auditor General is empowered to audit are those “appropriated or otherwise authorized by the General Assembly following the Governor’s preparation and submission of the State budget.”  
Chicago Bar Ass’n
, 183 Ill. App. 3d at 719. That construction is fully consistent with the stated purpose of the Auditing Act, which is to provide a comprehensive and thorough post audit of the obligation, expenditure, receipt and use of public funds of the state “to the end that the government of the State of Illinois will be accountable to the General Assembly and the citizens and taxpayers.” 30 ILCS 5/1–2(b) (West 2000). 

Based on the foregoing, there is no question that the Auditor General could lawfully audit those funds specifically appropriated or otherwise authorized by the General Assembly for the City’s airports following the Governor’s preparation and submission of the state budget. The problem is that none of the City’s three airports, O’Hare, Midway, and Meigs Field, receives any funding from the state treasury.

 An affidavit submitted by the City from its Deputy Comptroller for Enterprise Funds showed that the funds received and used by O’Hare and Midway consist primarily of (1) self-generated revenue from users of the airports, such as fees paid by the airlines, passengers and tenants, and (2) federal grants. The City does not pay for the operations of O’Hare or Midway. Their operations are accounted for separately from the City’s, and their revenues are deposited in trust accounts held by a bank. They are not deposited with the City’s treasurer. Since at least 1986, no state funds were budgeted, obligated or received for use at O’Hare. Midway previously received minimal state funding (less than 2% of its total revenues between 1991 and 1995), but that funding apparently came to an end in 1996. Grants from the state to Midway during 1995 and 1996 amounted to only approximately $45,000.

Meigs Field, the City’s third airport, is paid for by the City and included within the City’s budget. Although the City receives funding from the state for a variety of purposes, it has not received any state appropriations for operation of Meigs Field since 1995, when the amendment to the Auditing Act at issue in this case was enacted. Prior to 1995, state funding for Meigs Field was minimal.

Because of the reduction and eventual elimination of state funding for the City’s airports, an audit of those airports, which is limited by statute and by the constitution to public funds of the state, would necessarily be limited in scope. Based on the materials in the record, such an audit could not lawfully extend beyond the limited sums granted by the state for Midway airport in 1995 and 1996. The audit proposed by the Auditor General, however, would encompass all aspects of the City’s airport operations and operations of the City itself, to the extent those operations related to the airports, without regard to the source of funding. The circuit court was therefore correct in ruling that the audit was improper. It was likewise correct in refusing to enforce the subpoenas issued in connection with that audit.

In arguing for the more expansive audit he proposes, the Auditor General urges a definition of public funds of the state that is not restricted to funds appropriated or otherwise authorized by the General Assembly following the Governor’s preparation and submission of the state budget. Specifically, the Auditor General asserts that public funds of the state should include federal grants which the state receives for disbursements to the airports. We disagree. The City has correctly observed that the state has no lawful authority to utilize the federal grants for anything other than their intended purposes. When grants are made by the federal government for the City’s airports, the state merely serves as a conduit for the grants’ disbursement. See 620 ILCS 5/38, 40 (West 2000). These are federal monies. That they pass through the state’s treasury prior to disbursement to the City’s airports does not convert them into public funds of the State.

The Auditor General also attempts to justify a more expansive audit by pointing out that each year the City receives hundreds of millions of dollars from the state from the state income tax, state sales tax, and state auto/hotel tax. The Auditor General argues that because the City uses these funds for municipal services, including fire and police protection, and because some of those municipal services are utilized by the City’s airports, the airports can be said to utilize public funds of the state and are subject to audit on that basis. Once again, we disagree. The City charges the airports for the municipal services they utilize, and the airports pay for those services through the revenues they generate. The provision of such services therefore cannot be said to involve the expenditure of public funds of the state, even indirectly. In addition, because the municipal services used by the airports are paid for through funds generated by the airports rather than funds from the state treasury, permitting a state audit of the airports based on their use of municipal services could not possibly advance the ultimate objective of the Auditing Act which, as we have indicated earlier in this disposition, is to hold the State of Illinois “accountable to the General Assembly and the citizens and taxpayers.”

For the foregoing reasons, we conclude that the circuit court did not err when it granted judgment in favor of the City and against the Auditor General on the parties’ respective motions for summary judgment. The audit of the City’s airports exceeded the Auditor General’s constitutional and statutory authority and was properly enjoined. The judgment of the circuit court is therefore affirmed.

Affirmed.

JUSTICE GARMAN, dissenting:

I respectfully dissent. The majority finds the 1995 amendment to the Auditing Act constitutional by limiting the authority of the Auditor General to audit only those public funds of the state “ ‘appropriated or otherwise authorized by the General Assembly following the Governor’s preparation and submission of the State budget.’ ” Slip op. at 9, quoting
 Chicago Bar Ass’n
, 183 Ill. App. 3d at 719. This limitation is unduly restrictive. To the contrary, I conclude that article VIII of the Illinois Constitution and the Auditing Act set forth a comprehensive scheme for the control, management, and audit of state finances. The amendment to the Auditing Act does not contravene the Illinois Constitution and must be interpreted in a manner to assure that the expenditure of the public’s money is given appropriate scrutiny.

The Auditing Act implements article VIII, section 3, of the Illinois Constitution (30 ILCS 5/1–2(a) (West 1996)) and places the Auditor General under the control and direction of the General Assembly (30 ILCS 5/1–2(c) (West 1996)). The Auditor General is expressly recognized as a legislative officer of the State of Illinois under our constitution. 30 ILCS 5/1–2(c) (West 1996). The Auditing Act “is intended to provide a comprehensive and thorough post audit of the obligation, expenditure, receipt and use of public funds of the State under the direction and control of the Auditor General, to the end that the government of the State of Illinois will be accountable to the General Assembly and the citizens and taxpayers, and to the end that the constitutional and statutory requirements governing state fiscal and financial operations will be enforced.” 30 ILCS 5/1–2(b) (West 1996).

Through the 1995 amendment to the Auditing Act, the legislature explicitly directs the Auditor General to undertake an audit of the airports that “shall include, but not be limited to, an examination of revenues, expenses, and transfers of funds; purchasing and contracting policies and practices; staffing levels; and hiring practices and procedures.” 30 ILCS 5/3–1 (West 2000).  We should construe the statute so that no word or phrase is rendered superfluous or meaningless. 
Kraft, Inc. v. Edgar
, 138 Ill. 2d 178, 189 (1990). The plain language of the 1995 amendment with respect to the airports demonstrates that the General Assembly’s directive to the Auditor General contemplates an audit beyond a narrow category of state funds limited to only those public funds of the state directly dispersed to the airports and totaling only $45,000.

The essential question we are called upon to determine in this case is what funds constitute “public funds of the State.” We must determine whether the legislature intended the 1995 amendment to the Auditing Act to require the Auditor General to audit all public funds of the state, or only those state funds passed to the City and airports through appropriation, grant, or some other form of direct dispersal.

The Auditing Act states that the phrase “Public funds of the State” has “the meaning ascribed to that term in Article VIII of the Constitution.” 30 ILCS 5/1–18 (West 1996). However, the term “public funds” is not defined in the Illinois Constitution. Therefore, we must attempt to assign a meaning to the term as it is used in the constitution. The best guide to interpreting the Illinois Constitution is the document’s own plain language. 
Cincinnati Insurance Co. v. Chapman
, 181 Ill. 2d 65, 77 (1998). Interpretation of a constitutional provision begins with the language of the provision. 
Graham v. Illinois State Toll Highway Authority
, 182 Ill. 2d 287, 301 (1998).

Article VIII, section 1(a), of the Illinois Constitution of 1970 states that“[p]ublic funds, property or credit shall be used only for public purposes.” Ill. Const. 1970, art. VIII, §1(a). Article VIII, section 3, reads as follows:

“§3. State Audit and Auditor General

(a) The General Assembly shall provide by law for the audit of the obligation, receipt and use of public funds of the State. The General Assembly, by a vote of three-fifths of the members elected to each house, shall appoint an Auditor General and may remove him for cause by a similar vote. The Auditor General shall serve for a term of ten years. His compensation shall be established by law and shall not be diminished, but may be increased, to take effect during his term.

(b) The Auditor General shall conduct the audit of public funds of the State. He shall make additional reports and investigations as directed by the General Assembly. He shall report his findings and recommendations to the General Assembly and to the Governor.” Ill. Const. 1970, art. VIII, §§3(a), (b).

In addition to the plain language of section 3 of article VIII, it is important to note that section 4 does not distinguish between state and local funds. Section 4 provides:

“§4. Systems of Accounting, Auditing and Reporting

The General Assembly by law shall provide systems of accounting, auditing and reporting of the obligation, receipt and use of public funds. These systems shall be used by all units of local government and school districts.” Ill. Const. 1970, art. VIII, §4.

This section is evidence of the General Assembly’s constitutional authority to ensure adequate and responsible accounting and reporting of public funds at the local level. Moreover, section 4 reflects the General Assembly’s responsibility to ensure that all units of local government are properly utilizing public funds. For example, the General Assembly also permits, or in some instances mandates, the Auditor General to audit other political subdivisions in section 3–1. 30 ILCS 5/3–1 (West 1996).

The majority relies on the appellate court’s holding in 
Chicago Bar Ass’n v. Cronson
 for the proposition that “ ‘the role of the Auditor General is to conduct audits with respect to all funds appropriated or otherwise authorized by the General Assembly following the Governor’s preparation and submission of the State budget.’ ” Slip op. at 8, quoting 
Chicago Bar Ass’n
, 183 Ill. App. 3d at 719.
 While 
Chicago Bar Ass’n
 is instructive as to the general background of the Auditor General’s inception and duties, as well as the types and manner of execution of audits that may be conducted by the Auditor General, the facts of this case are distinguishable from 
Chicago Bar Ass’n
. The audit in 
Chicago Bar Ass’n
 related to a regulatory agency charged with the regulation of, and admission to, the practice of law in Illinois. It is well settled that this power is an exclusive function of the Illinois Supreme Court and is within this court’s inherent judicial power. 
People ex rel. Brazen v. Finley
, 119 Ill. 2d 485, 492-93 (1988). 
Chicago Bar Ass’n
 did not deal with specific legislation passed by the General Assembly mandating that the Auditor General conduct a specific audit. The audit in 
Chicago Bar Ass’n
 was not initiated at the direction of the General Assembly, but by the Auditor General himself. 
Chicago Bar Ass’n
, 183 Ill. App. 3d at 714.

It is also clear that the passage from 
Chicago Bar Ass’n
 relied upon by the majority is not compatible with the Illinois Constitution. In addition to the plain language of article VIII, article II, section 2, states that “[t]he enumeration in this Constitution of specified powers and functions shall not be construed as a limitation of powers of state government.” Ill. Const. 1970, art. II, §2. In 
People ex rel. Chicago Bar Ass’n v. State Board of Elections
, 136 Ill. 2d 513, 525 (1990), and 
Graham
, 182 Ill. 2d at 301, we stated that it “is well accepted in this State that the constitution is not regarded as a grant of powers to the legislature but is a limitation upon its authority; the legislature may enact any legislation not expressly prohibited by the constitution.” See also 
Kluk v. Lang
, 125 Ill. 2d 306, 324 (1988).

The General Assembly has the constitutional authority to direct the Auditor General to conduct a wide-ranging audit of the airports and the Auditor General should not be barred from conducting a legislatively directed audit of public funds of the state simply because those funds were not first submitted to the Governor for approval or because the funds have become an inseparable part of a larger whole that also contains funds from other sources. The Illinois Constitution clearly evinces both a scheme and a desire for citizens and taxpayers to be assured that the constitutional and statutory requirements governing state fiscal and financial operations will be enforced. In so doing, it does not limit the Auditor General’s authority to “all public funds of the state that can be clearly identified in the General Assembly’s line-item budget” or “all public funds of the state that can be characterized as direct grants or appropriations from an executive agency of the government of the State of Illinois.” It simply states that the General Assembly shall provide by law for the audit of the obligation, receipt, and use of “public funds of the state.”

The City received no less than $4 billion in public funds of the state during the years of 1995 through 1998. Were we to adopt the majority’s limited definition of public funds of the state, the majority of these public funds would not be subject to the legislatively mandated audit. The record indicates that the operations of the airports are funded from a number of different sources, including self-generated funds, state funds, and federal funds. Each airport is financed and operated on a stand-alone basis, separate from the City’s other operations. The revenue and expenses of O’Hare and Midway are accounted for and audited separately from those of other City departments and agencies. Because the operating budget of Meigs is small in comparison with the other two airports, it is accounted for within the City’s general corporate fund budget. The Auditor General introduced evidence that the City receives hundreds of millions of dollars in state funding annually. Relying on the City’s own financial reports for 1995 through 1998, the Auditor General contends that the City received a total of approximately $1.922 billion in state funding from a combination of the state income tax, the state sales tax, and state auto and hotel taxes. In addition, the City’s financial statements show that it received annually what were characterized as “Federal/State Grants.” According to the Auditor General, the City refused requests to disclose its breakdown of the grants into state and federal portions. The total for these grants for the years through 1998 was $2.269 billion. I agree with the majority that federal grant funds directed without condition to the City or airports by the federal government via the State of Illinois as receiving agent are not public funds of the state and are not subject to audit. The use and audit of these funds is governed by federal law. However, to the extent that such federal funds have been commingled with public funds of the state and cannot be separated, the Auditor General should also be permitted to examine such funds to the extent necessary to produce a meaningful and adequate audit.

When conducting an audit, the Auditor General examines proper management of resources and seeks to identify inefficient or uneconomical practices to ensure that public funds are being used to maximum efficiency. To hold that billions of dollars gathered from the taxpayers and citizens of Illinois are no longer subject to inspection and are beyond the reach of the constitutional officer charged with ensuring that they are used efficiently and only for public purposes, simply because the funds have been commingled with funds from other nonstate sources, or because the funds were not a specific grant or appropriation, would frustrate the purpose of the Illinois Constitution and the Auditing Act. “Public funds of the state” includes those funds appropriated by the General Assembly to the airports. In addition, the plain textual meaning of the term must also include those funds generated due to actions or policies of the state such as sales tax, income tax, or grants.

Therefore, I would find that the 1995 amendment to the Auditing Act directs the Auditor General to conduct an audit of the City of Chicago and any other entity regarding the operation of O’Hare International Airport, Midway Airport, and Merrill C. Meigs Field, and that the audit should not be limited to only those state funds directly dispersed to the City through grant or appropriation. Furthermore, the Illinois Constitution does not prohibit the General Assembly from directing the Auditor General to conduct such an audit, as it sets forth a comprehensive scheme for the control, management, and audit of state finances. Accordingly, the finding of summary judgment by the circuit court of Cook County in favor of the City should be reversed and the cause should be remanded for further proceedings.

JUSTICE THOMAS joins in this dissent.

FOOTNOTES
1:     
1
Article VIII, section 3(b), which defines the Auditor General’s authority, does not limit his power to conducting audits. It also authorizes him to make “additional reports and investigations as directed by the General Assembly.” That additional authority, however, is not pertinent to the dispute before us. The action challenged in this case is an audit, not some other type of report or investigation, and its validity must therefore be assessed in terms of the restrictions governing audits.