SECOND DIVISION

                                Date Filed: September 28, 2004

No. 1-03-0549

THE CANADA LIFE ASSURANCE COMPANY,    ) Appeal from the

                                      ) Circuit Court of

           Plaintiff-Appellee,        ) Cook County.

                                      )

           v.                         )

                                      ) No. 01 CH 4985

AYODHIA SALWAN,                       )

                                      ) Honorable Gay-Lloyd Lott,

           Defendant-Appellant.       ) Judge Presiding.

     JUSTICE HALL delivered the opinion of the court:

     The plaintiff, Canada Life Assurance Company, filed a declaratory judgment action against the defendant, Ayodhia Salwan seeking determination that it was entitled to a refund of money paid to the defendant, based upon a reimbursement agreement between the parties.  The defendant filed a counterclaim for benefits he alleged were wrongfully withheld from him by the plaintiff.  The circuit court of Cook County entered judgment in favor of the plaintiff on its complaint and entered summary judgment in favor of the plaintiff on the defendant's counterclaim.  The defendant appeals only the dismissal of his counterclaim.

     The sole issue on appeal is whether the trial court erred in granting summary judgment to the plaintiff on the defendant's counterclaim.  The following facts are taken from the pleadings, affidavits and depositions contained in the record on appeal.

     The defendant had been employed by Abrasive-Form as a grinder since 1979.  Abrasive-Form provided its employees with disability benefits under a policy with the plaintiff.  In 1990, the defendant was injured in an automobile accident, unrelated to his employment, and informed his employer that he could no longer perform his job.  Effective, May 5, 1990, the plaintiff began paying disability benefits to the defendant in the amount of $1,144 gross per month.  

     The disability policy provided in pertinent part as follows:

     "Proof of continued disability and regular attendance of a physician must be given to us within thirty days of the date we request the proof.  The proof must cover:

      1.  The date the disability began.

      2.  The cause of the disability.

      3.  How serious the disability is."

     The disability policy further provided that the payments under the policy would be reduced by income received from other sources and contained the following provision:

     "If, at the time of calculating the amount of any payments to be made under this policy, the benefit which a person is entitled to apply for and receive under any other source described in this provision has not been awarded nor denied, we will estimate the amount of such benefit.  The estimate will be used to reduce the amount of the payments under this policy until such time as the benefit under such source has been awarded or denied.  However, such estimate will not be used if, within six months of becoming disabled, the person meets both the following conditions.

      1.  The person has applied for the benefit under the other sources; and

      2.  The person completes and signs our Reimbursement Agreement.  This agreement states that the person promises to repay to us any overpayment caused by an award of the benefit under the other source."

     On February 5, 1993, the defendant signed the Reimbursement Agreement, acknowledging that he had made a claim with Social Security Administration.  In consideration for the plaintiff's payment of the full monthly disability benefit to him, upon payment of his claim, the defendant agreed to "refund immediately to [the plaintiff] the amount awarded to the extent of the full amount they paid us under this Agreement."  On March 24, 1994, the defendant was awarded $800 in monthly social security benefits, retroactively to February 3, 1990.

     The defendant had submitted proof of continuance of disability claim and attending physician's statement of disability forms in 1991 and 1992.  In a June 10, 1993, letter to the defendant, the plaintiff advised the defendant that if he did not provide it with updated medical information within 30 days, his claim may be terminated.  The plaintiff sent the required information on June 24, 1993.  

     In an April 15, 1994, letter to the defendant, the plaintiff referenced a February 2, 1994, visit by its representatives to the defendant and requested that the defendant furnish the name and address of the physician he had seen and the address of the hospital where he had undergone testing.  The letter also requested the name and address of the attorney representing the defendant in the litigation over medical bills.  

     On June 14, 1994, the plaintiff notified the defendant that it had received the information regarding the $800 social security payments the defendant was now receiving and that his new net monthly benefit would be $344.  The plaintiff calculated its overpayment to the defendant to be $36,800 and requested that the defendant reimburse that sum to the plaintiff within 15 days.  The letter also advised the defendant that it would not issue any further benefits until the overpayment was recovered in full.

     On July 19, 1994, the defendant wrote to the plaintiff acknowledging that the plaintiff had ceased paying him his monthly benefit and that the plaintiff wanted the $36,800.  The defendant also acknowledged the plaintiff's April 15, 1994, letter and advised that his attorney had died, and nothing was happening in the case.  Finally, the defendant pleaded financial hardship and requested that the plaintiff send his benefit check as soon as possible.  The defendant did not supply the medical information requested in the April 15, 1994, letter.

     On February 20, 1995, an attorney for the plaintiff wrote to the defendant advising him as follows:

     "This letter is in regards to your indebtedness to Canada Life.  Originally, the amount was $36,800.  I understand this amount has decreased due to withheld benefits, dating back to your failure to repay.  

      By agreement dated February 5, 1993, we agreed to continue your benefits unreduced until the outcome of your Social Security claim, in exchange for your agreement to immediately refund any overpayment resulting from a favorable outcome.  You have breached the agreement.

      Please contact me at your first convenience to discuss your prompt repayment of the indebtedness.  Should you continue in breach of the agreement we shall have no choice but to continue to withhold your benefits, and to consider other appropriate legal action."

     On April 28, 1998, the plaintiff filed its verified complaint seeking a declaration that it was entitled to payment from the defendant under the terms of the reimbursement agreement and an order for payment in the amount not reimbursed by the defendant.  The defendant answered the complaint on or about August 6, 1998.
(footnote: 1)  On September 26, 2001, the defendant filed a motion to amend his pleadings to add a counterclaim.  On December 17, 2001, the circuit court granted the defendant's motion to amend.

     On January 22, 2002, the plaintiff filed an amended motion for summary judgment on both its complaint and the defendant's counterclaim.  In support of its motion, the plaintiff argued that the uncontroverted facts established that the defendant had signed the reimbursement agreement agreeing to reimburse the plaintiff from the money received from his social security claim, that the defendant had received $36,800 in social security benefits, that the disability policy required the defendant to provide proof of continued disability, that the defendant failed to respond to the plaintiff's April 15, 1994, letter requesting such information, and that the defendant's benefits were terminated effective May 15, 1994, for his failure to provide proof of continuing disability.

     In his response to the motion for summary judgment, the defendant disputed the facts relied on by the plaintiff.  The defendant pointed out that, in its June 14, 1994, letter, the plaintiff advised the defendant that it would not be issuing any further benefits until the $36,800 had been repaid in full and that, in the February 20, 1995, letter, the plaintiff had advised the defendant that the $38,600 amount had been reduced due to the withheld benefits.  The defendant further pointed out that in his deposition, Daniel Trzos, the plaintiff's manager, testified that the defendant's failure to supply the name and address of his attorney, requested in the April 15, 1994, letter, would not be a reason to terminate his benefits.  The defendant maintained that the plaintiff already had the address of Dr. Penchal and that the address of the hospital was readily available from other sources.  Finally, the defendant maintained that he never received any notice that his benefits were terminated as opposed to being withheld and that, according to Mr. Trzos, the claim file did not contain the customary documentation memorializing the termination of the plaintiff's benefits.

     In its reply, the plaintiff submitted the following additional facts. The defendant had failed to submit any proof of continuing disability and attending physician's statement of continuing disability forms after December 31, 1993.  According to a report in the defendant's claim file, on February 2, 1994, employees of the plaintiff visited the defendant at his home.  They discussed with the defendant the upcoming social security hearing, the integration of benefits to him. The "continuous provision" and "final payment date" were also discussed.  The plaintiff also provided a copy of its computerized payment history to the defendant showing that it needed further disability evidence to continue payments to the defendant.  Finally, the plaintiff pointed out that, in his July 19, 1994, letter, the defendant acknowledged that the plaintiff had stopped his monthly benefit but did not provide any proof of continuing disability as he had done in the past. 

     In addition, the plaintiff now argued that the defendant's claim for further benefits was barred under the disability policy because without proof of disability, he was no longer disabled but had not returned to work for the employer.  The plaintiff also argued that the defendant's counterclaim was time-barred by the disability policy's three-year limitations period.

     On January 2, 2003, the circuit court granted the plaintiff's motion for summary judgment.  The court found that, pursuant to the reimbursement agreement, the defendant had agreed to reimburse the plaintiff the money he received from his social security claim and that the defendant had failed to reimburse the plaintiff.  The court further found that the defendant had failed to provide the plaintiff with proof of continued disability and that proof of continued disability was a condition precedent to disability payments.  The court ordered the defendant to reimburse the plaintiff the $36,800 plus costs, fees and interest and dismissed the defendant's counterclaim.

     Subsequently, the circuit court denied the defendant's motion for reconsideration and modified the judgment amount 
nunc
 
pro
 
tunc
 to reflect prejudgment interest and costs.  This appeal followed.

ANALYSIS

I.  Standard of Review

     In appeals from summary judgment rulings, the court's review is 
de
 
novo
. 
  
City of Chicago v. Holland
, 206 Ill. 2d 480, 487, 795 N.E.2d 240 (2003).

II. Discussion

     The purpose of summary judgment is not to try a question of fact but to determine whether one exists.  Summary judgment is proper where pleadings, depositions, admissions, and affidavits on file, when viewed in the light most favorable to the nonmoving party, reveal that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.'"  
Holland
, 206 Ill. 2d at 487-88; 735 ILCS 5/2-1005(c) (West 2000). 

     The defendant contends that the granting of summary judgment in this case was erroneous because the circuit court's determination that proof of continuing disability was a condition precedent to the disability payments was incorrect as a matter of law and that there were contested issues of material fact. 

     What is before us on review is the circuit court's judgment, not the reasoning the court employed.  
Holland
, 206 Ill. 2d at 491-92.  Our function is to determine whether the circuit court reached the proper result.  
Holland
, 206 Ill. 2d 492.  The reasons given by a lower court for its decision or the findings on which a decision is based are not material if the judgment is correct.  
Holland
, 206 Ill. 2d at 492.  As a reviewing court, we can sustain the decision of the circuit court on any grounds which are called for by the record regardless of whether the circuit court relied on the grounds and regardless of whether the circuit court's reasoning was sound.  
Holland
, 206 Ill. 2d at 492.

     The plaintiff contends that it was entitled to summary judgment because the defendant's counterclaim was filed beyond the three-year limitations period of the disability policy. The plaintiff argues that the defendant had three years from the time his benefits were terminated in 1994, or until 1997, to file suit to recover his disability benefits.  However, the defendant did not file his counterclaim until 2001.  The disability policy provided in pertinent part as follows:

     No action at law or in equity may be brought to recover under this policy until sixty days after written proof of loss has been given to us.  No such action may be brought more than three years after the time within which proof of loss is required to be given."       

     The defendant argues, first, that the plaintiff's suit is barred under the disability policy because it was not filed until 1998.  However, the defendant cites no case law in support of his argument and, therefore, it is waived.  Official Advance Sheet Reports No. 21 (October 17, 2001), Rule 341(e)(7), eff. October 1, 2001.  

     Next, the defendant argues that his counterclaim was timely filed pursuant to section 13-207 of the Code of Civil Procedure (the Code) (735 ILCS 5/13-207 (2000)).  Section 13-207 provides in pertinent part as follows:

          "A defendant may plead a set-off or counterclaim barred by the statute of limitation, while held and owned by him or her, to any action, the cause of which was owned by the plaintiff or person under whom he or she claims, before such set-off or counterclaim was so barred, and not otherwise."  735 ILCS 5/13-207 (West 2000).

     Pursuant to this provision, a defendant is allowed to file a counterclaim even though, if no suit had been commenced by the plaintiff, the defendant's claim would have been time-barred.  
Cameron General Corp. v. Hafnia Holdings, Inc.
, 289 Ill. App. 3d 495, 505-06, 683 N.E.2d 1231 (1997).  Under section 13-207, a party waives its statute of limitations defense against a setoff or counterclaim brought by his opponent, even if the counterclaim is not related to the claims in his primary complaint, as long as the counterclaim was not barred when the cause of action forming the basis of the claims in the primary complaint arose.  
Cameron General Corp.
, 289 Ill. App. 3d at 506.  The purpose of section 13-207 is to prevent plaintiffs from intentionally filing their claims as late as possible in order to preclude defendants from a reasonable opportunity to file their counterclaims within the original limitations period.  
Cameron General Corp.
, 289 Ill. App. 3d at 506.

     Although the statutory limitations period for breach of a written contract is 10 years, parties to a contract may agree upon a shortened contractual limitations period to replace a statute of limitations as long as it is reasonable.  
Medrano v. Production Engineering Co.
, 332 Ill. App. 3d 562, 566, 774 N.E.2d 371 (2002); 735 ILCS 5/13-206 (West 2000).  The defendant does not argue that the disability policy's three-year limitations period is unreasonable.  

     In 
International Business Lists, Ltd. v. American Telephone & Telegraph Co.
, 878 F.Supp. 102 (N. D. Ill. 1994), applying Illinois law, the court held that section 13-207 did not apply to contractually-established limitation periods, stating as follows:

"The plain language of the statute - - which refers to 'a set-off or counterclaim barred 
by the statute of limitation
" - - indicates that the section was meant to apply to statutory limitation periods." (Emphasis in original.)  
International Business Lists, Ltd.
, 878 F. Supp. at 106.

Therefore, section 13-207 does not preserve the defendant's counterclaim.

     Finally, the defendant argues that the plaintiff is estopped from raising the three-year contractual limitations period.  The defendant maintains that he was unaware that his disability benefits had been terminated, relying on the February 20, 1995, letter from the plaintiff stating that the defendant's benefit payments were being applied to the reimbursement of the $36,800 the defendant owed to the plaintiff.  The defendant further maintains that waiver or estoppel is a question of fact.  
Cassidy v. Luburich
, 49 Ill. App. 3d 596, 600, 364 N.E.2d 315 (1977).

     If a party's conduct has reasonably induced another to follow a course of action that otherwise would not have been followed and that would be to the latter's detriment if he did not later repudiate such course of action, an estoppel arises to prevent injustice or fraud.  
Beynon Building Corp. v. National Guardian Life Insurance Co.
, 118 Ill. App. 3d 754, 763, 455 N.E.2d 246 (1983).  "[G]eneral principles of equitable estoppel require the party asserting the estoppel to have relied on the act or representation and because of that reliance refrained from commencing an action within the limitations period; the conduct must have been of such character as to prevent inquiry, elude investigation, or mislead the party with the cause of action. [Citation.]"  
Benyon Building Corp.
, 118 Ill. App. 3d at 763.

     The gist of the defendant's counterclaim is the failure of the plaintiff to pay him his disability benefits.  As early as June 1994, the defendant was aware he was no longer receiving disability benefits from the plaintiff.  In the defendant's January 12, 1999, deposition, the defendant was questioned as follows:

     "Q.  So you were contemplating taking some action against Canada Life about a year ago?

      A.  Right.

      Q.  Because they weren't paying you the $344 a month?

      A.  Right.

      Q.  Okay.  And that never happened?

      A.  That never happened because my attorney was sick, so after that, we received letter from you."
(footnote: 2)
      Finally, the filing of the complaint in 1998, put the defendant on notice that his withheld disability payments were not being credited to the reimbursement amount.  In an affidavit in support of his response to the plaintiff's summary judgment motion, the defendant stated in pertinent part:

     "3.  I believed that benefits due me were being withheld and applied to the money Canada Life claims I owed.

      4.  I never received any statement from Canada Life that my benefits were terminated because I failed to supply medical information or otherwise except this litigation."

Moreover, in his answer to the complaint, the defendant did not raise an affirmative defense indicating that the withheld disability payments should be credited against the amounts claimed by the plaintiff.

     Therefore, even assuming that as a result of the February 20, 1995, letter, the defendant was unaware until April 1998, when the complaint was filed, that his disability payments had been terminated rather than withheld, he still failed to file his counterclaim until December 2001, beyond the three-year limitations period of the disability policy.  The record in this case does not present an issue of fact as to whether the plaintiff's conduct induced the defendant not to pursue his counterclaim until the expiration of the disability policy limitations period.

     We conclude that the defendant's counterclaim was barred by the limitations period in the disability policy.  Therefore, we affirm the grant of summary judgment to the plaintiff.  Deciding this case as we do, we need not address the parties' remaining arguments.

     Affirmed.

     HOFFMAN, P.J., and SOUTH, J., concur.

      

      

        

     

    

 

           

FOOTNOTES
1:
In its motion to default the defendant, the plaintiff states that it filed a verified amended complaint on August 11, 1998.  On April 20, 1999, the circuit court granted summary judgment to the plaintiff.  However, that decision was reversed and remanded by this court.  It does not appear from the record on appeal that the defendant filed an answer to the verified        amended complaint.

2:
Not the attorney who died.